## James Boyce's Executors, Appellants *vs.* Felix Grundy, Appellee.

The courts of the United States have equity jurisdiction to rescind a contract on the ground of fraud, after one of the parties to it has been proceeded against on the law side of the court, and a judgment has been obtained against him for a part of the money stipulated to be paid by the contract.

This court has been often called upon to consider the sixteenth section of the judiciary act of 1789, and as often, either expressly or by the course of its decisions, has held that it is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy.

It is not enough that there is a remedy at law: it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity. [215]

It cannot be doubted that reducing an agreement to writing is in most cases an argument against fraud; but it is very far from a conclusive argument. The doctrine will not be contended for, that a written agreement cannot be relieved against on the ground of false suggestions. [219]

It is not an answer to an application to a court of chancery for relief in rescinding a contract, to say that the fraud alleged is partial, and might be the subject of compensation by a jury. The law, which abhors fraud, does not permit it to purchase indulgence, dispensation, or absolution. [220]

APPEAL from the decree of the circuit court of West Tennessee.

A bill in chancery was filed in that court by the appellee, Felix Grundy, against the appellants, the executors of James Boyce, to enjoin a judgment at law which they had obtained against him for four thousand seven hundred dollars, and to rescind a contract made between James Boyce and himself, on the 3d of July 1818, by which Boyce sold and agreed to convey to the complainant, Grundy, nine hundred and fifty acres or arpents of land on the Homochito river, in the state of Mississippi, and for which Grundy agreed to pay him twenty thousand dollars; two thousand of which were to be paid in hand, and the balance in yearly instalments of two thousand dollars. A deed of general warranty was, by the written agreement of the partners, to be made to the purchaser in four years.

Grundy having failed to pay the amount of the instal-

ments due January 1820 and 1821, Boyce's executors commenced suit upon the contract for the two first instalments, in the circuit court for the district of West Tennessee, and recovered judgment for the same with interest. On the 30th of August 1823, Grundy filed his bill, praying an injunction against the judgment at law, and a rescision of the contract.

The grounds of equity stated in the bill and relied on, were the fraudulent and false representations of Boyce, in making the sale of the land.

1. In regard to an island in the river, part of the land purchased, containing two hundred and sixty-five acres, not being subject to inundation, except a very small part, easily prevented; and of the quality of the land on said island.

2. In showing and selling a body of good and level land, as part of the tract, which *is not* included within its limits. And representing that a quantity of bad and hilly ground was not within the tract, which *is* included.

3. In representing that he had a good title to the land; having no title, and not being able to make a good right.

The answer of the defendants in the circuit court denies the allegations charging fraud and misrepresentation by James Boyce, and avers Grundy's information as to the true state of the title, the quantity and quality of the lands; and alleges that they have been prevented from obtaining the legal title by the failure of Grundy to pay the instalments due upon the contract, and which were necessary to enable them to obtain a conveyance.

Depositions were taken on the part of the complainant and the defendants; which with other testimony were exhibited in the circuit court on the hearing of the cause. The testimony exhibited on the part of the complainant in that court, fully established the allegations in the bill, to the satisfaction of the court. The whole evidence is referred to, and the facts of the case are sufficiently stated in the opinion of this court.

The circuit court perpetuated the injunction, and rescinded the contract between Boyce and Grundy; and decreed that

[Boyce's Executors *vs.* Grundy.]

the money paid by the complainant to Boyce should be refunded with interest. The defendants appealed to this court.

Messrs Ogden and Wickliffe, for the appellants, contended:

1. That the charge of fraud and misrepresentation as set forth in the bill, in reference to the title, quantity, boundary, and overflowing of the land, is not sustained by proof.

2. That the court below erred, in decreeing a rescision of the contract, upon the grounds assumed in the decree. That the court erred in refusing to continue the cause for the reasons stated in the exceptions filed by the defendants. The court erred in admitting, as evidence in this cause, the papers and parts of depositions referred to in the several bills of exceptions.

3. The testimony in this cause, the matters of fact involved, were of a character which imperatively called upon the chancellor to direct an issue at law, to try the controverted facts.

4. The court should have referred the cause to a commissioner, with directions to report upon the title.

5. The decree should have been interlocutory, and not final. Time should have been given defendants to make the title and tender it, upon the payment or tender of the purchase money.

The counsel for the appellants, after full argument on the facts, as to the law of the case, said, that the bill filed in the circuit court was to rescind a contract on the ground of fraud. In all cases of fraud, courts of equity in England, and chancery courts in the United States, have concurrent jurisdiction with courts of law. Mad. Chan. 258. 6 Johns. Rep. 110. It is a well settled principle of law that fraudulent representations will vitiate any contract. 1 Comyn on Contracts, 38. In case a contract is obtained by such representations, it will be vitiated and destroyed in its binding force. If money has been paid under such misrepresentations, it may be recovered back. If a suit be brought at law upon the contract, the fraudulent representations may

be set up as an effectual defence at law. If the vendee takes possession of the property, he may abandon it and consider the contract as not binding on him.

Thus there is at law an adequate and a competent remedy, and full relief can be obtained at law from the effects of such a contract.

Has then a court of the United States jurisdiction in the case? By the judiciary act, the equity powers given to the courts of the United States are not to be exercised when there is a full and adequate relief at law.

2. Fraud cannot be alleged in most cases where the agreement has been reduced to writing. It is an argument of great force against fraud, Sugden on Vendors, 129, upon the principle that all the allegations and representations of the parties will be presumed to have been embodied in the writing. 4 Taunt. 785.

3. They also contended that after a judgment has been obtained in a suit in which the alleged fraud might have been set up as a defence, no injunction will lie, 3 Merivale's Rep. 225, 226. Chit. on Contracts, 113. Cited also, Sugden on Vendors, 129. To show that the case was not one for a court of equity, were cited, Hepburn vs. Dundas, 1 Wheat. 179. 5 Cranch, 502. Morgan vs. Morgan, 2 Wheat. 290. Dunlop vs. Dunlop, 12 Wheat. 576. 10 Ves. 144. 3 Bro. Ch. Cases, 73. 16 Ves. 83. 9 Ves. 21. 1 Bro. Ch. Cases, 546. 1 Ves. & Beames, 355, 356. 1 Barn. & Cress. 623. 5 Dowling & Riland, 490.

Mr Isaacks and Mr White, for the appellee, contended, that the evidence on the record fully established the allegations of fraud in the bill, and that the decree of the circuit court was in harmony with the weight of that evidence. A fraud had been committed both as to the quality, the quantity, the situation, and the title of the land.

They argued that the case was one which came fully within the jurisdiction of a court of chancery. The construction of the act of congress, which would limit the chancery powers of the courts of the United States to cases only in which there is no concurrent legal remedy, is contrary to that

which it has constantly received since the organization of the court under that law.

The case made out in the complainant's bill is one peculiarly within the jurisdiction of a court of equity; and the relief which such a court can afford, is the only adequate means to protect the complainant from gross injustice and fraud; to restore him to the situation in which he was before the contract was made. Without this remedy he would be exposed to a multitude of suits, and subjected to heavy expenses, for which he could not be reimbursed. Fraud and trusts are peculiarly within the command of the chancery courts. In support of these principles, the counsel for the appellee cited, 1 Mad. Chan. 262. 3 Cranch, 280. 9 Ves. 21. 1 Jacob & Walker, 19. 5 Johns. Ch. Rep. 174. 2 Cowen, 129. 2 Johns. Ch. Rep. 596. 6 Munford, 283. 4 Price's Rep. 131.

Mr Justice JOHNSON delivered the opinion of the Court.

This is an appeal from the decree of the circuit court of West Tennessee, rendered in a case in which the appellee was complainant.

The bill was filed to obtain the rescision of an agreement entered into on the 3d of July 1818, between James Boyce, the appellants' testator and devisor, and the complainant, for the sale of a tract of land lying on the Homochito river, in the state of Mississippi.

The grounds set forth in the bill are fraudulent misrepresentations.

1. As to the testator's title to the land. 2. As to the locality of the land. 3. As to the liability of the land to inundation. 4. As to the general description of the character and quality of part of the land not examined by complainant.

We have weighed the allegations of fraud contained in the bill, and are well satisfied that they are material, and such as entitle the complainant to relief if substantiated.

We have also considered the evidence introduced by the complainant, and compared it with the rebutting testimony

introduced by the appellants, and are of opinion that the testimony in support of complainant's allegations is full to the purpose of sustaining his bill, and the credibility of his witnesses fully established, wherever it has been necessary; so that in those points in which it has been contradicted by the appellants' witnesses, we cannot avoid giving credit to that of the complainant.

The decree below must therefore be sustained, unless the appellants can prevail upon some legal ground which will except this case from the general rules on this subject. The first and principal ground taken is, that the court of law was competent to give relief, and that this court should refuse relief, as well on the general principle as affirmed in the judiciary act, as because :

1. That the complainant was not prompt in insisting upon the fraud as soon as discovered; and

2. Because he did not avail himself of it in a plea to the action at law.

This court has been often called upon to consider the sixteenth section of the judiciary act of 1789, and as often, either expressly or by the course of its decisions, has held, that it is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. It is not enough that there is a remedy at law; it must be plain and adequate; or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity.

In the case before us, although the defence of fraud might have been resorted to, and ought to have been sustained in that particular suit, and I will add, would have greatly aided the complainant in a bill to rescind, yet it was obviously not an adequate remedy, because it was a partial one. The complainant would still have been left to renew the contest upon a series of suits; and that probably after the death of witnesses.

That he was bound to be prompt in communicating the fraud when discovered, and consistent in his notice to the opposite party of the use he proposed to make of the discovery, cannot be questioned. But we cannot concede to the

appellants' counsel, that the complainant was chargeable with delay or inconsistency in the particulars.

In his bill he alleges that the fraud did not come to his knowledge until 1821, and that he forthwith gave notice to James Boyce, that he might resume possession of the premises, and receive the rents and profits, for that he would not comply with the contract; which notice he repeated to the appellants after Boyce's death.

It has been argued that the testimony establishes an earlier notice, and even a contemporaneous notice of the facts which the complainant alleges were concealed or misrepresented.

The misrepresentations relied upon are of two classes: those which relate to the land, and those which relate to the title.

As to the title; the case furnishes no ground for imputing to the complainant contemporaneous notice of the involved state it was in. The evidence of the fact of representation on this subject, rests chiefly on the deed and the letters from Port Gibson. From these it clearly appears, that so far as relates to the two hundred acres purchased from Ellis, the complainant could not, even at the time of sale, have been put on inquiries respecting the title. For the deed expressly imports that the whole land sold was comprised within the grant to Davis. With regard to the land actually comprised within the grant to Davis, if the agreement to make a present sale of land, for which there was to be made present and successive payments to a large amount within four years, does not imply a present title or a present power to sell, it certainly amounts to a representation, that at the end of four years the seller would be able to make a clear title.

But since, upon the discovery made at Port Gibson, the notice given by the complainant was not of an intention to rescind, but of a claim for a deduction pro rata, and since time is expressly given to the extent of four years to make title to the whole tract; we will not affirm that, in the absence of any proof of positive loss from want of title in the interval, if the party had been able to make title when the bill was filed, and had so answered, and duly set out the title

to be tendered, that it would have been a case for relief. But the defendants in their answer go into an exposition of the only title they can offer, and that is so involved and imperfect, that a court of equity would not even refer it.　If then the appellants were now before this court, under a bill for a specific performance, it is clear that they must be turned out of court, being incompetent on their part to fulfil the contract.　The rules of law relating to specific performance and those applied to the rescision of contracts, although not identically the same, have a near affinity to each other.

Again, if the object of the complainant's bill had been confined to obtaining an injunction until he could receive from defendant a good title to the land; can it be doubted that where the cause of action at law is a covenant in the same deed which stipulates for such a title, that he would be injoined until he made a title ?　And if so, how long is this state of suspense to be tolerated ?　The title was to be made in four years; this certainly amounts to a representation that he would be able to make title at that time ; but twelve years have now elapsed, and still it is not pretended that a clear legal estate has been acquired.

In excuse for this, it is urged that the complainant committed the first fault; that had he been punctual in his payments, Boyce would have been able to procure to be executed to himself, a title that would have enabled him to comply with his agreement.　But the state of his title is before us, and a mere tender of money was not sufficient to give him a legal estate.　He must still have passed through the delays and casualties incident to a suit in equity, before he could have acquired such an estate as would have satisfied the just claims of the complainant.　The case, however, furnishes a more conclusive answer to this argument.　The two hundred acres not included in Davis's grant, valued at the average which complainant would have paid for all the good land actually contained within his purchase, would have satisfied every payment that fell due within the four years.　This deduction he informed Boyce he would insist upon, and there is no evidence in the cause to make it clear that Boyce did not acquiesce in this agreement.

It is argued, that of the defects in Poyce's title the court could not be informed; that the complainant did not ask for a specific performance, and the defendants were not therefore called upon to set out their title. But by referring to the bill it will be seen that they are expressly called upon to set out their title, and in their answer undertake to do so, and in the effort, exhibit a title which he cannot deny is defective, but instead of setting out a title free from defects, content themselves with showing that the defects are not incurable.

With regard to the misrepresentations relating to the land, the only evidence by which it is attempted to fasten on the complainant a want of promptness and consistency in availing himself of the discovery when made, is that by which a knowledge at the time of the contract is supposed to be established. Of the witnesses from whom this evidence has been obtained, it is enough to say, that with the exception of Mr Poindexter, it is impossible to avoid putting their testimony out of the case. And Mr Poindexter's testimony, even without his subsequent examination, may, without any forced construction, be reconciled with that of the witnesses who testify to the representations made by Boyce at the time of the sale. It relates exclusively to the subject of inundation, and when the complainant spoke to this witness of the island's overflowing, he accompanied it with the assertion that the overflowing could be prevented by a levée at a small expense. This may well be confined to the representations received from Boyce, and does not necessarily imply a knowledge of its being subject to general inundation. Nor was the information received from Mr Poindexter on this subject of such a full and decided character as to amount to a communication of knowledge. It is said that it ought to have put him on inquiry; but he was in possession of Mr Boyce's positive assurances to the contrary, and had a right to rely upon that assurance without inquiry. The bill alleges the time of coming to his knowledge to have been that of the communication authorising the party to take possession, and the evidence is not sufficient to prove notice at any previous time.

The second ground on this head of the appellants' argument

has been partly answered by the doctrine laid down upon the construction of the judiciary act, on the subject of the remedy at law. And so far as it relies on the adjudication quoted from Merivale, we think it unsustained. The position is, that an injunction to restrain proceeding on a judgment at law, will be refused by the court of equity to a party who had a defence at law and neglected to plead it. The doctrine of the case quoted, we conceive, has no bearing upon the present. The question there was upon a point of practice, whether a special injunction should issue instead of the common injunction; there was no question about the right to the latter, but the circumstances of the case were such, that the common injunction did not afford full relief to the party. The rule of practice as laid down by the court is, that the special injunction goes only in those cases in which, from their nature, the defendant can make no defence; such as judgments on warrants of attorney. This was not such a case, but the party went for an exception in his favour, grounded upon a state of facts which brought him within the reason of the rule. And it was in fact granted.

It has been farther argued for the appellants, that reducing the agreement to writing precludes a recurrence to all representations; and to establish this doctrine, a passage from Sugden has been quoted. It cannot be doubted that, in the language of the author, reducing an agreement to writing is, in most cases, an argument against fraud. But it is very far from a conclusive argument, as is previously shown by the same author on the same page. The doctrine will not be contended for, that a written agreement cannot be relieved against on the ground of false suggestions; and yet if the doctrine of this quotation were the rule, instead of an incident to it, such would be the consequence.

There is no attempt made here to vary the written agreement; the relief is sought upon the ground, that by false suggestions and immoral concealment, the party seeking relief was entrapped into an agreement in which he would not otherwise have involved himself. This is not denying that the agreement in the record was the agreement entered *into,*

but insisting that it was vitiated by fraud, which vitiates every thing.

It has been further argued, that the misrepresentation, if at all established, was but of a personal character, and susceptible of compensation or indemnity, to be assessed by a jury.

On this there may be made several remarks; and first, that if the facts made out such a case, yet the law, which abhors fraud, does not incline to permit it to purchase indulgence, dispensation, or absolution.

Secondly, that although, locally, a misrepresentation may be partial, yet it may be vital in its effects upon the views and interests of the party affected by it. Such was the case of Fulton *vs.* Roosevelt.

But lastly, the evidence makes out a case very far removed from one of merely a partial character. North, south, east, and west, we find the misrepresentations influencing the estimate of the value of these premises. Indeed, if we are to believe the testimony of Randel M'Garvick; and its clearness, fulness and fairness speaks its own eulogium; a case of more general or more vital misrepresentation, can seldom occur, or a case of more absolute devotion to misplaced confidence. Not only for the qualities and incidents, but also for the lines, the representations of the seller were implicitly relied on, and certainly to the most important results as to the value of the property. M'Garvick proves that they were carried to a certain fence, which fence excluded a large knob, as it is called in that country, containing a considerable body of untillable and worthless land, and expressly told by Boyce that the fence was his line. Thus explicitly declaring that that body of bad land was not included in the land sold him, whereas in fact it was included; and in another direction where the land was fine, as if to make up the deficit in quantity to an experienced eye, he represents the land in view as being included within his survey, when in fact it was not all included. And suppose the utmost effect be given to the testimony of the appellants relative to the actual extent to which the island was subject to inundation; still it leaves wide ground for the charge of misrepresentation.

[Boyce's Executors *vs.* Grundy.]

The testimony is full to establish that, in several years, the whole has been overflowed. And the most favourable state of facts will leave from one hundred to one hundred and fifty acres, instead of fifteen or twenty, subject to this casualty in ordinary years. This, although partial in one sense, is total as to the diminution of the value of the whole. Compared with the representation proved, it certainly annihilates the very material consideration that it admitted of being prevented at a small expense, more especially as the chief injury was to be expected from the waters of the Mississippi.

In a purchase of nine hundred and fifty acres at twenty dollars an acre, such a discrepancy between facts and representations as would add thirty-three and a-third, or perhaps fifty per cent per acre to the cost, is not a case for mere compensation. And, if not a case for mere compensation, there was no controlling necessity to send the cause to a jury.

The decree must be affirmed with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of West Tennessee, and was argued by counsel; on consideration whereof, it is ordered, and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.