Mr. Justice Trottee.
delivered the opinion of the court.
TLiis is an appeal from a decision of the chancellor, overruling a motion to dissolve the injunction which had been granted. The motion was made upon the facts in the bill, answer and exhibits. In considering this case, we do not think it necessary to notice any thing which appears upon the pleadings prior to the amended bill. For the matters contained in that bill, and the answer to it, raise the only questions which were discussed by the counsel in the argument, or are material to the decision. These facts are, that since the original bill was filed by the complainant, he has discovered that Davidson, the defendant below, had no title to eighteen of the slaves included in the purchase from him, and that they rvere held by Davidson as trustee merely, for his wife and children, according to the terms of a marriage contract between him and his wife anterior to their intermarriage. This contract is referred to and made a part of the bill. This defect of title was concealed from the complainant by Davidson, who represented that he had at the time of the sale a good title *682 to these slaves. For this fraud in the sale, the bill prays a recession of the contract, an injunction to restrain the trustees from selling under the trust deed, &c.
The answer admits the execution and existence of the ante-nuptial agreement, as stated in the amended bill, but denies all fraud. The respondent states that as he had been so advised by counsel, he thought the contract of no efficacy, and its existence did not occur to him at the time he made the sale. And as evidence of the honesty of his intention and the good faith in which he acted, shows that so soon as he learned that the complainant was dissatisfied, and intended to make that contract an objection to carrying the contract of purchase into execution, by paying the residue of the purchase money, he, the respondent, procured a valid deed of release and confirmation from his wife and his four children, the only persons that are or can by possibility become beneficially interested in the slaves, to be made to said complainant, which he tendered to him, but which was refused. The deed is made an exhibit in the answer, and is admitted to be an extinguishment of the only adverse title to the property. These are the material features of this case, and the simple question which they present for the consideration of the court is, whether they furnish a ground for rescinding the contract either in whole or in part. It is assumed in the argument of the counsel for the appellee, that the allegations of the amended bill which charge a fraudulent representation as to the title of the slaves, and also a fraudulent concealment of the outstanding incumbrance, are not denied in the answer, and must therefore be taken as confessed. The answer denies all fraud, and states as a reason for not mentioning the outstanding title, that he did not deem it of any importance, having been advised that it did not affect his title. The reason stated for the omission to disclose this fact is certainly no excuse in law. For whether it be true or false, is a question which can never be decided by any human tribunal in the present imperfect condition of mankind. It is impossible to explore the recesses of the human heart, and detect the motives by which it acts. Such being the case, the laws of the country have laid down the best practicable criterion in such cases, which is perhaps within the reach of human adoption, by referring to the *683 conduct of the party, and determining the intention by that standard. 10 Vesey, 475.
The effect of the admission in the answer of the appellant, that he concealed the defect in his title which is complained of, is not at' all obviated by the reason given, that it escaped his memory. In this view, therefore, of the bill and answer, the proposition contended for is unquestionably correct. For no principle is better established, than that fraud vitiates every contract, and so renders it void both at law and in equity. And in the application of this maxim to the transactions of men and their dealings with one another, no difference is taken ordinarily between a false and deceitful representation of a fact, and the fraudulent concealment of a material circumstance, either in regard to the quality or the title of the subject matter of the contract. And hence, when the subject of the representation or concealment is not equally open to the observation of both parties, or the vendee has not equal means of knowledge with the vendor, the latter is bound by the principles of good faith and common honesty, to state nothing but what is true, and to conceal'no material fact connected with the condition of the article. And hence, if there be an intentional concealment of such material fact in cases where both parties have not equal access to information, it will be deemed fraudulent and avoid the contract. 2 Kent’s Com. 2 ed. 482. And hence, if a vendor sell an estate knowing that he has no title, or that there are incumbrances on it of which the vendee is ignorant, and he suppress such a material fact, there is no doubt the vendee may compel a recission of the contract; 8 Story’s Equity, 818-19. For the purchaser necessarily reposes a trust and confidence in the vendor, that no such defect exists. These views regard the transaction as a fraud in fact, and point to the consequences which the law affixes.
It is urged, however, for the appellant, that there are collateral and subsequent facts in the case which explain the mere omission to.communicate the existence of the marriage contract, and fully reconcile the conduct of the appellant with the claims of good faith. They repel the imputation of a fraudulent intent. Amongst others, the circumstances, that the appellee has never been disturbed in the enjoyment of the property; that appellant proposed *684 to re-purchase the slaves, and that he has since procured a release and confirmation of the title from all those, who are, or can by possibility derive any title- from, the deed- of marriage settlement It is not necessary, however, to constitute a fraud, that there be an evil intention^ For though it be true, that to constitute a fraud in fact there must ¡be a fraudulent intent, yet the law has determined that certain acts may amount to a fraud, however innocent - may be the motive. Thus it has been decided, that if a representation is made as to the quality or condition of an article to induce the vendee to buy, and it turns out to be false, in such case though the false representation is innocently made it will not excuse the vendor, who ought not to make a representation to one going to deal on the credit of it, without knowing that it is true. This is a fraud in law, as well as morals. And hence, notwithstanding that the several parts of this transaction go very far to redeem the vendor from the imputation of any evil or corrupt design in his conduct at the sale, yet we cannot for that reason alone feel authorized to exempt him from liability.
There is another point of view in which, however, these facts may have an important influence upon the present case. We allude more especially to the deed of release and confirmation from Mrs. Davidson, the wife of the appellant, and the four children. This deed relieves the title from all difficulty, and in effect does all which it was the intention of the parties ever to do, that is, to - transfer to, and vest in, the appellee the complete unincumbered title to’ the slaves. This would seem to leave him no ground for complaint. But he insists that by the fraud stated in the bill he. acquired a right to insist on the recission of the bargain, and that - he cannot be estopped by this after transaction. It is admitted, that there1 are cases in-which this could not be done, more especially-where the vendee had been prejudiced by the cloud over his title, or where he had evidently sustained an injury if the con-' tract should-be enforced.- Nothing of that kind appears in .this case, however., The appellee was put into possession at the date of the contract, and has continued in peaceable possession ever since, unmolested by the outstanding incumbrance, of which it seems he never heard until after he had commenced this suit, and filed his original bill. If this1 were a proceeding to compel a *685 performance of the contract, supposing it to have been executory, would the deed here tendered be held .sufficient? 'We think it would. . For though the day fixed for making the. title had ■elapsed, it would in eqdity at least be held a fulfilment of the covenant for title. For though at law time is. considered to be of the e'ssence of the contract, yet in equity it is .not ordinarily so regarded. And therefore we find that in the court of chancery the time for completing the contract is always enlarged, unless it appears that the parties deemed it of importance, or that the non- "■ compliance has produced an injury to the party against whom it is sought to be enforced. 2 Sch. & Lefroy, 347, 684. This is also most dearly the opinion of the very able jurist who decided the case of Garnett v. Macon, 6 Call. That case was similar to the present, except that it was an executory contract for the .purchase of land, which at the time of the sale was equitably charged with payment of debts, of which notice came to the purchaser between the date of the contract and the time when it was to be executed. The rule stated by Judge Marshall is, that a specific performance will not be decreed,en the application ofithe vendor, unless his ability to make such a title as he agreed to make is unquestionable. {The ground taken against completing the contract by the vendee was, the. existence of the outstanding incumbrance, .of which he had no notice. ■ There the incumbrance was removed, but net at the time specified for conveying the title. The ■pourt then proceeds to observe, that “ courts of equity compel the performance of contracts, because it is the intention of the parties that they shall be performed. But the- person, who demands it must be in a condition to do substantially all that he has promised. But kt what time this capacity must exist;-whether it must be at - the date of the contract, at the time it is to be executed, or at the. time' of the decree, depends upon circumstances which may vary with every case.-” In such case -the inquiry must be, whether the vendor could at the time have conveyed such title as the vendee had a right to demand; if he, could not, then, whether he can now, and if he can, whether there has been such a change of circumstances that a court of equity ought not to compel a vendee to take it. In that case the court refused to decree performance, because a material change had taken place *686 in regard to the land, after the period fixed for making the title, which resulted greatly to the prejudice of the vendee. And yet it is quite evident that if the circumstances of the case had not shown that the time fixed for the execution of the agreement was deemed of importance by the parties, so as to produce an injury to the vendee, the decision would have been different.
The case of Hepburn & Dundass v. Auld, 5 Cranch, 262, was determined on the same ground. The case of Brashier v. Gratz et al. 6 Wheat. 528, arose on a contract for the sale of lands, for the title to which suits were then pending in Kentucky. The sale was in March, 1807. Brashier gave his notes for the purchase money and agreed to attend to the prosecution of the suits. He gave twenty-two dollars and fifty cents an acre. The suits were not pressed to a decision. In 1811, the fees were demanded of Gratz, who paid them. Brashier about this time went to Philadelphia, and his notes being protested for non-payment, Gratz requested him either to pay them or that the contract should be rescinded, Brashier would do neither. He became insolvent, and Gratz took the suits into his own hands, which were decided in his favor in 1813. About this time lands rose suddenly in value, when Brashier tendered payment of his notes, and demanded a conveyance of the land. And under these circumstances, the court held that he was not entitled to a specific execution of the contract. The rule that in equity time is not of the essence of the contract, is not of universal application. Circumstances may be so changed, that the object of the party can be no longer accomplished, and he who is injured by the failure of the other contracting party, cannot be placed in the situation he would have stood if the contract had been performed. Upon the analogy of these cases, we think there is no difficulty in determining the present question. In this case the contract was executed, but that makes no difference so far as the principle is concerned. The contract is fulfilled in this case, and the covenant of title fully kept by the tender of the deed, showing a capacity to convey at any time before a decree. Here there has been no change of circumstances ; uo evidence that the object of the appellee in the purchase has been defeated, or hindered, or embarrassed by the existence of the incumbrance complained of. He is placed by *687 it in the situation he desired by the purchase, the cloud is removed from his title, and he has sustained no injury. There is no proof of any loss or damage .by the appellee in consequence of the defect alledged. And in the case of Boyce’s Executors v. Grundy, 3 Peters, 210, at was held, that in the absence of such proof, if the party is able to make title when the bill to rescind the contract is filed, and so answers and duly sets out the title to be tendered, it may be- a good .answer do the bill. That is virtually the case here. There the grounds for setting aside the contract were, defect of title' in the Vendor, and false and fraudulent representations ih regard to the condition, as well as the title of the lands sold. That case so far as the principle goes, decides this. Hence we conclude, that though there may have been a fraud practised by the vendor at the time of the' contract, the vendee has not sustained any injury, arid therefore has no claim to the relief which he seeks. íraud without a consequent damage,can give no ground for an action, or to be relieved from the contract. It is stated by Judge Story in his Equity, vol. 1. p. 212, that “ Courts of Equity do not-sit, any more than courts of law, to enforce moral obligations, or correct unconscientious acts which are followed by no loss or damage.” And in Bacon v. Brown, 7 J. Ch. Rep, 201, it is said that fraud accompanied by a damage, will entitle'the injured party to relief in any court of justice. It is therefore quite evident to us, that in any point of view in which this case can be considered, there is no ground for -setting' aside the contract. • ,
The decree of the chancellor must be reversed, and the injunction • dissolved. ’ . ;