*Court of Common Pleas, Dauphin County, March 15th,* 1864.

GANDOLFO *v.* HOOD, EXECUTOR OF SELTZER.

When one person gave to another a certain sum of money in order to settle a claim for which the former was liable, and the latter compromised it for a less amount than was given to him, and kept the balance, keeping the fact concealed from his principal, this was such a case of fraud as comes within the jurisdiction of a court of equity, and a bill will lie even against the personal representatives of the agent. A prayer for a discovery will not be granted, unless the bill is in proper form with the necessary averments. A bill in equity should contain all matters necessary to show that a claim is not barred by the statute of limitations. In a case of fraud, the statute does not commence to run until the discovery.

BY THE COURT.—The complainant sets forth in his bill that Thomas Appleton, Jr., and himself constituted the firm of James Gandolfo & Co., and that their firm, together with Levi D. Seltzer, deceased, arranged with N. F. Cunningham & Co., to purchase certain cotton goods, etc., each to advance equally, and bear an equal portion of the loss, or divide the profits in like manner. Owing to losses on sales and on certain drafts, the firm of Gandolfo & Co. and L. D. Seltzer became indebted to the firm of N. F. Cunningham & Co. in something like $19,567, in all of which each owed equal moieties. In 1851 the plaintiff's firm became dissolved, and he undertook the payment of the partnership debts. In 1853 he placed in the hands of Seltzer the sum of $2800 in cash, and a claim for $3197.60, due the firm of Gandolfo & Co. for certain property at Cincinnati, with which Seltzer agreed to settle plaintiff's portion of the debt with Cunningham & Co. if practicable. That Seltzer afterwards informed him that he had used the whole of the funds so delivered to him in making the settlement, and had discharged his indebtedness, but refused to disclose the terms of the settlement, alleging that they were to be kept secret. Cunningham & Co. also refused to divulge the terms under the same excuse. This business was transacted in the year 1853, and Seltzer then gave to Gandolfo a receipt for all of the funds furnished him, amounting in the whole to $5997.60, which he states in the receipt he had "used to compromise the claim which N. F. Cunningham & Co. had against said James Gandolfo & Co." The plaintiff then avers that he never knew the true sum paid by Seltzer in discharge of the claim of Cunningham & Co. against him, until the year 1861, when a member of that firm was called as a witness in a controversy between himself and partner, when it was disclosed that Seltzer had only paid in liquidation of said debt the sum of $2000, and the witness also produced the letter of said Seltzer to their firm, requesting them to keep the amount secret from the plaintiff. He alleges that Seltzer thus fraudulently converted the sum of $3997.60 of plaintiff's money to his (Seltzer's) own use, and the

[Gandolfo *v.* Hood, Executor of Seltzer.]

fraud was not discovered until thus divulged on the trial. To this bill, the defendant has filed a general demurrer, assigning as cause therefor, that the court has not jurisdiction to sustain the bill, as the party has full and ample remedy at law, and cannot come into a court of equity; also pleading the statute of limitations in bar to the proceeding; and further averring that the plaintiff is not entitled to have the discovery sought, but should be required to prove his case before a jury, and establish the validity of the writing which is the foundation of his claim.

The equity jurisdiction of our courts in this State is limited to those subjects and cases referred to in the Constitution, or pointed out by the statutes, but when conferred, is quite general within the subjects designated. Among these are "all cases of fraud, either actual or constructive." That the common-law courts have jurisdiction in many cases of fraud, is well known to every lawyer, as remedy therefor is furnished daily. But the suitor can very generally have a choice of forms, and can seek redress either at law or in equity, for wrongs of that character. In passing on this bill as demurred to, we must take all the facts stated as true; and if so, it discloses and sets forth a case of gross fraud. A pretence by Seltzer that he had expended all of the money intrusted to him by Gandolfo to pay the debt of the latter, when in reality he had discharged it with less than half the sum. Also that he had enjoined on the creditor to keep the compromise a secret, so that the fact might not come to the plaintiff's knowledge. The only impediment in the way of proceeding in equity, is that the injury might perhaps be fully redressed by an action of assumpsit. This remedy, however, was not permitted to defeat the bill in Church *v.* Moore et al. (10 Barr, 274), where the subject is fully examined by Gibson, C. J., who concedes that under our practice such an action can be sustained, but speaks of it as a clumsy and inefficient remedy. It was there held that under the jurisdiction conferred by the acts of 1840 and 1845, the party may resort to the equity side of the court in cases of fraud, actual or constructive, to redress the same wrongs formerly corrected at law; that the remedy heretofore was but a bill in equity in the guise of an action at law. Judge Story, in his Equity Jurisprudence, s. 187, says in substance, "that the frauds over which courts of equity have jurisdiction, include all acts, omissions, and concealments, which involve a breach of legal or equitable duty, trust, or confidence justly reposed, injurious to another, or by which an undue or unconscientious advantage is taken of another." Lord Hardwicke says that "courts of chancery have undoubted jurisdiction to relieve against every species of fraud" (Chesterfield *v.* Janssen, 2 Ves. 155). And Jeremy defines fraud to be "a device by means of which one party has taken an unconscientious advantage of the other" (Jeremy's Equity, B. 3, pl. 2, p. 358).

That the transaction complained of in the bill is of that char-acter, and comes within the above definition, is self-evident; as we can conceive of no greater fraud than where a person is intrusted by another with a sum of money to discharge his indebtedness to a third, that the party so intrusted, after liquidating the debt with half the sum, should pretend to the person so confiding in him, that he had applied the whole amount in payment, and thus pocket the residue. For a further illustration of this subject see 1 Story's Eq. Jur. 185–194. But it must be conceded that chancery has not jurisdiction in *every case* of fraud; for full, complete, and adequate redress may sometimes be had at law. If, however, the remedy be not as plain and adequate, practical and efficient, to the ends of justice and its prompt administration, as in equity, the party has the right to resort to that jurisdiction (3 Peters, 215; 11 Conn. R. 112, 1 Parsons's E. R. 180). The remedies are frequently concurrent (13 Ves. 275, 10 Ibid. 470). Where the remedy at law is doubtful or difficult, equity will have jurisdiction (1 Ves. Jr. 416; 1 Paige's Ch. 90; 4 Howard, 455). And the necessity of resorting to several actions at law, instead of having the whole settled in a single hearing in equity, will justify a resort to that remedy (1 Pars. Eq. R. 220).

And again, whenever a principal is demanding an account and discovery from his agent of transactions during his agency, it will justify a resort to equity (4 Mad. Chan. Rep. 198 and 416). It cannot be pretended that in the present case the plaintiff would be *obliged* to bring an action of account render, as they were not partners in trade, and the dealings between the parties were confined to a few transactions; but the business, as disclosed in the bill, was very considerably complicated, and could be best unravelled in equity. It is, to say the least, problematical whether the claim could be settled by a single action at law, where the suit must always be brought in the names of legal parties, and here a portion of the money furnished the defendant clearly belonged to James Gandolfo, whilst the funds at Cincinnati were owned by Gandolfo and Co., though from the settlement afterwards they were vested in James Gandolfo individually. Equity looks to the equitable owner of a fund, and sustains proceedings in his name; whilst at law there must always be legal parties to the action based upon the contract, although the suit may be for the use of the equitable owner. It has been urged that we should entertain jurisdiction in this case in order to compel a discovery; but we should hesitate so to do on the present bill, which scarcely demands it in proper form. There is no doubt of the right of a principal to require from an agent a full discovery of the business transacted, and even from the executor of an agent, if he has acquired any important information from the papers of the decedent; but

the discovery should be prayed in clear terms and in proper form, with averments as to the necessity, etc., nearly all of which is omitted in this bill. It can scarcely be considered a bill for the discovery of facts; but it is clearly settled that where a court of equity entertains a bill for discovery and obtains it, relief will be granted by the same court, if properly demanded.

Therefore, we sustain this bill on the ground of the fraud complained of, and because the facts can be better investigated in equity, from their complicated nature; also to prevent the necessity of resorting to two actions at law, and being a demand for a discovery and account by a defaulting agent, as is alleged. Therefore, the demurrer for want of jurisdiction is overruled. There is a plea of the statute of limitations interposed against this claim. The practice at law and in equity essentially differ in one particular. At law the narr is on the claim generally; and if the plea of the statute is interposed, the replication sets up the matter of avoidance. In equity the bill itself must state every essential fact relied on to take the case out of the operation of the statute. This is fully done in the present bill, which avers the pretence that the whole sum of money was used by Seltzer to settle Gandolfo's debt; the stratagems resorted to by him to prevent the plaintiff from discovering the actual amount paid, and the accidental discovery of the fraud in the year 1861, when Mr. Cunningham was examined as a witness, which he states was his first knowledge of the facts. It is clearly settled that the statute of limitations applies in the same manner in courts of law and equity (6 H. 20). But it is scarcely necessary to resort to authority to show that, where a secret fraud has been practiced, the statute will be no bar in either court until discovery. That is not in a court of equity, see Angell on Limitations, 28, 188; 5 John. Ch. 522; Story's Eq. Jur. s. 1521, a; and the same doctrine is held at law in many cases (5 Mason C. C. R. 149; 3 Barn. & Ald. R. 436); and although this has been at times disputed in courts of law, yet it seems to be settled in Pennsylvania, where our courts proceed on equitable principles (4 Y. 109; 1 Watts. 401; 2 Parsons, 3). Therefore, the plea of the statute of limitations must be overruled. It has been suggested by the defendant's counsel on the argument, although not raised by the pleadings, that we have not all of the proper parties to this bill. We know not whose name could be added. It is certainly unnecessary and would perhaps have been error to have made Appleton a party plaintiff, as equity looks to the person who has expended and is entitled to receive the money on a decree, not to him whose name was used on the contract. Cunningham & Co. would not be proper parties, as no decree could be made against them. The fraud, if perpetrated, was by Seltzer alone, and the party injured was Gandolfo, and none other. It is also complained that one great point of con-

test here is the genuineness of the receipt set forth in the bill, and its authenticity should be established before a jury. Should that prove to be an important matter of controversy, the court may direct the question to be determined by that tribunal. But we have yet to learn that a jury can pass on the genuineness of a writing with any greater certainty than an intelligent master in chancery, before whom the same proofs must be made as on a trial in court.

All of the objections to this proceeding must be overruled, and the defendant required to answer over.

*Lamberton and Simonton, for plaintiff.*

*Alricks, for defendant.*