## KERR v. WOOLLEY ET AL.

### [NOVEMBER TERM, 1866.]

TAX LAWS, NECESSARY PROVISIONS OF.—A tax law which fails to secure the equality and impartiality of the tax which it authorizes, which fails to provide for an adjustment and equalization of assessments, or guaranties for the economical, faithful, and impartial administration of the law, and an appropriation of the tax to the purposes for which it is levied, is void.

THE ACT OF JANUARY 18, 1865, ENTITLED "AN ACT CONSOLIDATING AND AMENDING THE SCHOOL LAWS," contains none of these securities to the tax-payer, and in so far as it authorizes the collection of a school tax is unconstitutional and void.

AN INJUNCTION WILL ISSUE where there is no adequate remedy at law, and, as in this case, the law under which the tax was levied being void, injunction to restrain the collection of the tax is the only adequate remedy.

SUIT IS NOT THE PROPER REMEDY FOR THE COLLECTION OF A TAX, unless expressly given by statute.

INJUNCTION PROCEEDINGS, COSTS IN.—The defendants brought suit in the probate court against complainants, and recovered judgment for the tax held, on the allowance by this court of a perpetual injunction restraining all further proceedings to collect the tax, including all proceedings upon the judgment, that complainants' costs in defending the action in the probate court would be taxed in the costs of the injunction proceedings.

THE SUPREME COURT UNDER THE ORGANIC ACT OF THE TERRITORY is a court of original chancery jurisdiction, limited only by the nature of the court and the necessity of the case.

ORIGINAL bill in the supreme court for an injunction. The opinion states the facts.

*Hempstead & Thurman,* for the complainants.

*Snow & Gibbs,* for the defendants.

TITUS, C. J.:

This case arises upon a bill in chancery of John W. Kerr against Edwin D. Woolley, William S. Godbe, John H. Rumell, and John H. Winder, praying the supreme court of Utah to prevent by injunction, the collection of a school tax of two and a half per cent on all taxable property of the thirteenth school district of the said territory. The three first-named defendants are all who answer the bill, and they pray the court to refuse the injunction and dismiss the bill with costs to them.

It appears that the legislature of Utah, by "An act approved January 18, 1865, consolidating and amending the school laws," enacted, among other things, "that where not already done, the county courts in the territory of Utah shall divide their respective counties into school districts, and number the same, and shall notify the inhabitants, as soon as districts are formed, to meet within ten days and choose three trustees, who shall appoint their own clerk; and they shall act one year, and until successors are duly elected and qualified."

It is also required by the same act that "said trustees shall cause to be assessed and collected a tax upon all taxable property in said district, at such rate per cent as may be decided upon by a vote of a majority of votes cast by the residents of said school district, at a meeting called for that purpose; and in case of neglect or refusal of any person to pay the tax assessed, upon being duly notified thereto, the trustees shall have power to collect the same as the territorial and county taxes are collected, to dispose of any taxable property, and any conveyance made upon the same shall be valid."

The last section of this act repeals an act entitled "An act in relation to common schools," approved December 30, 1854; also an act approved January 20, 1860; and an act approved January 15, 1862.

It appears by an act of the same legislature, " prescribing the manner of assessing and collecting territorial and county taxes, and for other purposes, approved January 20, 1865," sec. 10, " that in case any person neglect or refuse to pay his tax when required, the assessor and collector are hereby required and empowered to take and sell enough taxable prop-

erty belonging to the delinquent to pay his tax and costs of collection. Said property shall be sold to the highest bidder at public sale, after at least six days' public notice shall have been given of the time, place of sale, and kind of property."

From none of these acts subsisting or repealed does it appear that any responsibility or qualification is or ever has been required of school trustees in the territory. The usual oaths of fidelity and bonds and securities are all dispensed with.

The subsisting act seems to confess this defect, by providing that trustees chosen on notice from the county courts "shall act one year, and until their successors are elected and qualified." What sanctions are necessary to render these successors thus "qualified" are nowhere stated, however.

It further appears that the whole tax thus assessed in the thirteenth school district was between twenty thousand and thirty thousand dollars; that thirteen other persons thus assessed with this complainant for an aggregate of six thousand seven hundred and ten dollars and sixty-five cents refused to pay the tax, and that these trustees, instead of pursuing the summary remedy provided in the act of their creation, sued each one of these persons in the probate court of Great Salt Lake county, severally, for his respective assessment, and that after judgment in that court, and bond filed on these cases with securities satisfactory to the judge thereof, an appeal to the district court, the clerk of the probate court refused to furnish the transcript of its record for the prosecution of such appeal unless all his fees were prepaid.

The complainants' bill also prays incidentally that further proceedings between these parties for the tax in question in the probate court be enjoined by this court.

The allegations of the complainants' bill are, that the act under which these defendants have been proceeding is null and void, for want of the requisite precautionary legal sanctions; that all the acts done under it are and can be no other than unauthorized and unlawful, and that this court has the power and ought to restrain the said defendants from all further proceedings against the complainant upon the law for the tax in question.

On the contrary, the defendants in their answer affirm the

validity of the law in question, deny the power and jurisdiction of this court to declare it void, and maintain that the judgment of the probate court in favor of the defendants against the complainant for the tax in controversy has rendered the case *res judicata* there, and that therefore it can not be disturbed in the present proceedings.

Thus stands the case upon the pleadings and accompanying admissions. It must be conceded that there are in jurisprudence, like axioms in exact science, certain fundamental principles which can not be negatived or disregarded. Many of these have been recognized by the courts as well as positively declared by the highest lesislative authority.

Among other such in the constitution of the United States, article 5 of the amendments, last two clauses of the article, we find that no person shall "be deprived of life or property without due process of law;" nor shall private property be taken for public use without just compensation.

This citation, which strongly illustrates the present case, justifies the subjoined statement of practical principles, which are submitted as self-evident in themselves; that is, no tax is legal which is not for some necessary or at least useful public purpose; no tax is legal where the amount arbitrarily exceeds the purpose of its creation; no tax is legal which is not equally and impartially laid on tax-payers; no tax is legal which is not economical, honest, and responsible in its administration; and no tax law is valid in so far as it fails to secure these conditions to the tax-payer in particular and to the public in general.

Taxation is always one of the most repulsive, and may be one of the most ruinous, exercises of public power. It can have, however, hardly a less exceptionable object than the support of common schools; and were there no exceptions to the law in question apart from its purpose, this court would scarcely feel itself authorized to disturb its operation.

Nothing, however, appears to show that the tax in question is at all adjusted to the amount or purpose of its declared object. No estimates or exhibits are required by the law, and none appear to have been shown the residents when authorizing this tax, nor to those required to pay it since. The law under examination provides, section 3: "The trus-

, tees shall, out of the funds collected, see that a suitable build-ing or buildings, with necessary appendages, are furnished wherein a school or schools shall be taught, keep the same in repair, and supply the same with fuel." Doubt has been justly expressed whether the power to "furnish" thus deduced by the law would enable the trustees to buy, build, or rent a house.

In the thirteenth school district, as well as elsewhere, the school-houses are not unfrequently appended to meeting-houses much larger and more expensive than themselves. Under the ambiguous terms of this law, all, or nearly all, of a very large tax ostensibly for schools might then be applied to a very different object. An affidavit permitted by the de-fendants to be read on the hearing of the present case with-out objection, and not denied even in argument, very emphati-cally indicates that such may have been the purpose of a large part of the tax in controversy.

The present case, therefore, strongly illustrates the danger of loose legislation on this most important subject.

The law under consideration provides no security for the equality and impartiality of the tax which it purports to authorize. No appeal is allowed the school-tax payer such as is authorized for territorial and county taxes. No court or other tribunal is opened to him where he may be permitted to show that his own tax is too high or his neighbor's too low. Indeed, the easy terms of reduction proposed for some of these assessments, as shown in the present case, and the fact that with a very considerable reduction in others some other of these assessments always remained the same, demonstrates that exact proportion was little understood or regarded by those to whom the administration of this tax was committed. The law itself does not pretend to furnish the tax-payer any security in this particular.

The most valuable quality in all tax laws are rapidity, cheapness, faithfulness, and impartiality in their administra-tion; and no law ought to be enacted or maintained which provides no security for these particulars. No qualifications, no sanctions, no responsibilities, are exacted of those who are to execute this law and deal with its moneys. Neither oaths nor bonds nor securities are required for its faithful execu-

tion; and any attempt to supply them in practice, in the absence of legal authority, would probably be wholly futile. Swearing these trustees would have subjected all concerned to indictment "for the misdemeanor at common law of administrating unnecessary and extrajudicial oaths." The letter of this law communicates no sanction to bonds or security under it.

As already shown, no appeal or other remedy is allowed the tax-payer by the provisions of this law, and no security is required for the children, the parents, the tax-payer, or the public at large, that one dollar of the tax collected under it would ever reach its destined object. It is in vain to say that individual integrity is a sufficient guaranty. Elsewhere and under other laws, the most powerful sanctions are found necessary to be exacted of the most eminent individuals as guaranties of their official fidelity. The present case authorizes us to dispense with none of these.

No case, perhaps, can be found which more emphatically challenges the action of a court in restraining rash and incomplete legislation than the present one: 1 Kent's Com. 447–449, 451, and cases there ecited; 3 U. S. Dig. 482, sec. 3; *Ham* v. *McCarns*, 1 Bay, 93, and cases cited; 1 U. S. Dig. 565, sec. 236; 3 Id. 482, sec. 4.

For the absence, therefore, of all proper sanctions and securities which belong to a valid tax law, the one under examination ought to be declared null and void, in so far as it purports to confer a power upon these defendants—trustees—to assess and collect the tax in controversy.

The next question is, Has this court power to declare in the present case?

Section 9 of the organic act of Utah, among other things, declares "that the judicial power of the said territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace;" and "the jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law; provided, that justices of the peace shall not have jurisdiction of any matter in controversy, where the title or boundaries of land may come in question, or where the debt or sum claimed shall exceed one hundred

dollars; and the said supreme and district courts shall respectively possess chancery as well as common-law jurisdiction."

This proviso obviously refers to the original jurisdiction of the justices of the peace and of the supreme and district courts, and places it in the particulars mentioned beyond the reach of Utah legislation.

Further on in the same section the whole appellate jurisdiction of the supreme court of the territory of Utah is thus conferred: "Writs of errors, bills of exceptions, and appeals shall be allowed in all cases from the final judgments and decrees of the district courts to the supreme court, under such conditions as may be prescribed by law."

No grant of power or jurisdiction is limited which is not subjected to terms of limitation. Such is the chancery jurisdiction, conferred by the above-cited clause on the supreme court of Utah. It is not appellate; it is not alternative. It is subjected to no restriction or limitation whatever. It is precisely of the same kind as that conferred by the same clause on the district court, which is admitted to be original.

This proviso does not confer appellate jurisdiction on the supreme court, for the whole of that is conferred by another and independent clause. The rule of construction which requires that if possible some effect shall be given to all parts of a statute demands that we ascribe to this clause of the organic law the grant of organic chancery jurisdiction to the supreme court of Utah.

It is impossible appellate jurisdiction could in the language of the organic act above cited be respectively passed by the supreme court.

This is the description of an abstract and independent jurisdiction. An appellate jurisdiction is never thus abstracted in one court, but always applicable to both the subordinate and supreme courts. Its very description embraces both in terms.

An appellate jurisdiction can not be defined as common law or chancery in the manner they are defined in the proviso in question.

Every appeal or writ of error carries the case from the court below to the court above, to be under the same code,

whether chancery or common law, to which it was subjected in the court of its origin. It can be tried by no other. The very mention, therefore, of chancery jurisdiction in this proviso shows that the granting power meant to confer by it an original chancery jurisdiction on the supreme court of Utah.

The inevitable conclusion, therefore, is that the supreme court of Utah does possess original chancery jurisdiction, excepting in so far as it is limited by the nature of the court or the necessity of the case. This jurisdiction might perhaps have been further limited by local legislation. It has not, however, been so limited.

The evils apprehended from bringing remote cases to the supreme court in chancery here can hardly have a real existence. Certain it is that all the parties connected with the present are on the spot. The existence of a power is indirectly admitted by those who argue its abuse, possible or actual, as is done here.

The supreme court of the United States has its original chancery jurisdiction; the highest courts of the states wherever equity jurisdiction exists have theirs, perhaps without exception; both the federal and state jurisdictions are combined in the territorial courts: *Benner et al.* v. *Porter,* 9 How. 235; *Hunt* v. *Palao,* 4 Id. 589.

The power to issue injunctions is one of the highest of all chancery powers; it belongs, therefore, with peculiar propriety to the supreme courts, whether of the United States or of the states or of the territories, and to this court as one of the last-named class. The court having the power to issue injunctions originally in chancery, is the present case as presented by the bill a proper one for its exercise?

The law under which the defendants assessed the tax in controversy has already been declared null and void, in so far as it purports to confer any taxing power on them. It follows, therefore, as an evitable consequence, that the whole proceedings of the trustees, defendants, under it, including the suits in the probate court, were altogether unauthorized and illegal.

Further progress of these proceedings, therefore, can be no other than an expensive evil for which the common law fur-

nishes no adequate remedy. The mere legal costs of a series of complicated litigation might and probably would be paid the successful parties in the end. But for their loss of time, enforced absence from business, professional expenses, and anxieties of litigation, the common law has no adequate remedy.

Even a multiplicity of suits will be restrained in chancery in all cases where they are merely unnecessary or useless. Much more will equity exert its restraining power when these suits are wholly unauthorized or vexatious: *Barber* v. *Barber*, 21 How. 582; *The State of Pennsylvania* v. *The Wheeling and Belmont Bridge Co.*, 13 Id. 518; *Rogers, Ex'r*, v. *Grundy*, 3 Pet. 210; *United States* v. *Rowland*, 4 Wheat. 108; *Osborn* v. *The United States Bank*, 9 Id. 841, 842; *Livingston* v. *Story*, 9 Pet. 632.

The most favorable [view] of the defendants' case fails to find any remedy at all for the evils which this bill asks us to prevent. Refusal, therefore, to furnish the preventive aid of the injunction which this bill prays for in the present case would be an inexcusable denial of justice.

This conclusion applies to all the proceedings under the statutes in question by these defendants, and to every stage of them.

The proceedings in the probate court would have been unauthorized and illegal, even if the statute in question had been valid and effective, with all its present terms and provisions.

The second section of this statute, adopting the tenth section of the one for collecting territorial and county taxes, both of which are cited above, provides that the property, real and personal, of any one who refuses to pay his tax may be levied on or distrained, and sold, conveyed, or delivered in satisfaction of the same and costs. This is the only remedy prescribed by that statute, and there is no other hinted at from the beginning to the end of it.

Now, it is an established rule that all statutory modes of executing any laws, or any power under a law, must be strictly pursued: *A. D. M. Turnpike Company* v. *Guild*, 6 Mass. 44; *Franklin Glass Co.* v. *White*, 14 Id. 286; 3 U. S. Dig. 43, sec. 30.

Under the act in question, if effective for the purpose under consideration, the defendants, trustees, would have been a *quasi* corporation with taxing powers: 3 How. (Miss.) 84; 13 Ill. 27; 13 Mass. 192; 13 Johns. 422; 1 and 5 Cow., *passim.*

The supreme court of the United States has decided, *Jefferson Branch Bank* v. *Skelly*, 1 Black. 436, upon this question of taxation and kindred ones, that the rule of construction is against the corporation and in favor of the public, and neither the right of taxation nor any other power of sovereignty will be held to have been surrendered unless such surrender has been expressed in terms too plain to be mistaken.

To the same effect are *Billings* v. *The Providence Railroad Bank*, 4 Pet. 561; *Charles River Bridge* v. *Warren Bridge*, 11 Id. 420; *Girden* v. *The Appeal Tax Court*, 3 How. 133; *The Richmond Railroad Company* v. *The Louisiana Railroad Co.*, 13 Pet. 71; and many other cases of the highest authority, all of which enjoin a strict construction and execution of all such powers.

It is wholly unnecessary to multiply citations as to the strict construction of the power in question and the class to which it belongs. But for this rule of strictness, the remedies in all such cases might at last come to depend upon the mere caprice of parties, in the unbridled discretion of the courts.

There is nothing in the doctrine of *res judicata* to sustain the proceedings for this tax in the probate court or out of it. This rule applies only when the court of the judgment is positively shown to have had undoubted jurisdiction, not only of the cases of action, but also of the parties, and to have fairly and fully exercised it: *Sparry's Case*, 5 Co. 61, part 2; *Saabroke* v. *James*, Willes, 199; *Sollers* v. *Lawrence*, Id. 416; *Nicholl* v. *Mason*, 21 Wend. 339; *Cleavland* v. *Rogers*, 7 Id. 438; *Brown* v. *Seymour*, 9 Johns. 221; *McKnight* v. *Dunlap*, 4 Barb. 36.

In the present case the contrary of all this appears. The very law under which the case arose in the probate court is shown not to be of any validity to vest the power under which the defendants' claim to have proceeded in the probate court.

The whole procedure in the probate court is an absolute departure from the only remedy which the law under exam-

ination purports to furnish, and the adoption of one nowhere pretended to be sanctioned by any law or practice.

Neither the doctrine of *res judicata* nor any other rule of support can sanction the proceedings complained of in the probate court, which are null and void, and ought therefore to be restrained by this court.

Wherefore this court order that as this cause came on to be heard in bill, answer, and statement of facts, and was argued by counsel, on consideration whereof it is now ordered, adjudged, and decreed by this court that the special injunction already issued in this case to restrain the defendants from all further proceedings against the complainant to collect the tax described in the bill filed in the present case, especially all further proceedings in the probate court of Great Salt Lake county for the same purpose, be and the said injunction is hereby made absolute and perpetual; and that the defendants' pay the complainant all his costs incurred from the said proceedings, not only all these incurred in this court upon the bill filed in the present case, but also all those incurred in the probate court for the collection of the tax aforesaid; and that the clerk of this court certify this order to the said defendants."

Drake and McCurdy, JJ., concurred.