UNITED STATES LIFE INS. CO. IN CITY OF NEW YORK v. CABLE.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 622.

1. JURISDICTION IN EQUITY—FEDERAL COURTS—ADEQUATE REMEDY AT LAW.

To constitute an adequate remedy at law, which will deprive a federal court of equity of jurisdiction of a suit between citizens of different states, such remedy must be one enforceable in the same court by an action which may be brought by the complainant. A remedy existing only in a state court is not sufficient; nor is the right to plead the matters alleged in the bill in defense to an action brought by the defendant, and which is under the defendant's control.

2. SAME—SUIT FOR CANCELLATION OF INSURANCE POLICY.

A federal court of equity will not refuse to entertain a suit by a life insurance company, which is a citizen of another state, against a citizen of the state where the suit is brought, for the cancellation of a policy of insurance, after the death of the insured, on the ground of the existence of an adequate remedy at law, notwithstanding the commencement of an action on the policy by the defendant in a state court, where the bill alleges facts showing that the delivery of the policy was procured by fraud at a time when the insured was dangerously sick, and that he died before plaintiff had knowledge of the facts, and which also shows that, under the laws of the state relating to foreign insurance companies, if it removes the action from the state to the federal court it will forfeit its license to do business in the state.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellant (plaintiff below), a life insurance company, is a corporation organized under the laws of the state of New York, and doing business in the city of New York. It brings this suit in equity against the defendant, Alice A. Cable, a citizen of Chicago, Ill., as administratrix of Herman D. Cable, to cancel a certain policy of insurance issued by the plaintiff upon the life of said Herman D. Cable in January of the present year. There was a general demurrer put in by the defendant to the bill of complaint, and this appeal is from an order and decree of the circuit court sustaining the said demurrer, and dismissing the bill for want of equity.

The facts, as alleged in the bill, are substantially as follows: On the 16th of January, 1899, Herman D. Cable, a resident of Evanston, Ill., made application in writing to the plaintiff for insurance upon his life in the sum of $50,000. The application was forwarded to the New York office of the plaintiff, and the plaintiff on or about the 17th day of February, 1899, executed its policy numbered 94,082, upon the life of Cable, agreeing, in further consideration of $848.50 to be paid on delivery thereof, and of a like sum to be paid on the 6th day of February in each and every year thereafter until 10 years' premiums should have been paid, and upon acceptance of satisfactory proofs of the death of Cable within 10 years, ending on the 6th day of February, 1909, that the plaintiff would pay $50,000 in 30 consecutive annual installments of $1,666.66, to the estate of Cable,—subject, however, to certain terms and conditions set forth in said policy and in the application therefor, one of which was that

the policy should take effect only in case of delivery of the policy during the sound health and insurable condition of the insured. The policy, after its execution, was sent by the plaintiff to its agent in Chicago, Joseph H. Strong, and on or about the 21st day of February, 1899, was tendered to Cable, who refused to accept it or to pay the first premium thereon, saying that he wanted some further information about the plaintiff. When said Cable made his application for insurance, a like application was made by his friend, George S. Lord, also a resident of Evanston. A similar policy of insurance upon the life of Lord was issued by the plaintiff, and on the 27th day of February, 1899, was delivered; being actually handed to Lord by one James F. McCabe, an attorney and insurance broker of Chicago, through whom Lord and Cable had, by mutual arrangement, made their respective applications for insurance. On the last-mentioned date Lord learned from McCabe that Cable had not accepted his policy, and Lord thereupon requested said McCabe to obtain the policy written for Cable, and to bring it to him (Lord); saying that he (Lord) would take the policy, and would pay the first premium upon it in behalf of Cable. Thereupon, on the same day, McCabe obtained from the plaintiff, and delivered to Lord, the policy upon the life of Cable, and received from Lord the premium due thereon, and said premium was duly received by the plaintiff. On Friday evening, the 24th day of February, 1899, Cable became ill. During the following night or next day his illness was diagnosed as pneumonia, and his condition was then regarded as serious; and on Sunday, the 26th, his life was despaired of by the physicians. On Thursday, March 2d, he died, as the result of acute pneumonia. Lord was well aware of the serious physical condition of Cable on Sunday, February 26th, and knew that he was believed by his physicians to be suffering from pneumonia. On the morning of Monday, February 27th, and before Lord had seen McCabe on that day, Lord visited or communicated with the family of Cable, and on the afternoon of that day procured the delivery to him of the policy upon the life of Cable, with full knowledge of the dangerous illness of Cable, and of the stipulation in the policy and in the application that the policy should take effect only upon payment of the first premium, and upon its delivery during the sound health and insurable condition of Cable, and with the wrongful intent and purpose of having the policy become immediately effectual for the benefit of the estate of Cable in case his illness should terminate fatally. The plaintiff had no knowledge of Cable's illness until his death. That said illness was not made known to the plaintiff, but was purposely and willfully concealed from it, and, had the plaintiff known of his condition, it would not have delivered to said Cable the policy, and the plaintiff never authorized the delivery of the policy through Lord under the conditions existing when Lord obtained it. The premium which Lord paid was paid with the funds of Lord, and not those of Cable. Cable never authorized Lord to accept the policy and pay for the same, and did not during his lifetime ratify what was done. Lord was not an agent of Cable for the purpose of receiving the policy and paying the premium. The procuring of the policy by Lord was not a delivery to Cable, and the procuring of the policy and its delivery by him to Cable individually did not create an effectual contract. In the forenoon of the same day, and an hour or more before the filing of the original bill in this case, the defendant began in the superior court of Cook county an action at law against the plaintiff for the computed amount of said policy of insurance, laying the damages at $55,000, and caused a summons to be issued, which was served upon the agent of the plaintiff on the 15th day of May, 1899. The summons in this action was served upon the defendant on the day on which the bill was filed, to wit, on the 11th day of May, 1899. The bill further alleges, by way of showing that the plaintiff has not an adequate and complete remedy at law, that the state of Illinois, by legislative enactment, has sought to prevent the removal into this court by insurance companies of actions similar to this, and has destroyed such right, or made its exercise impracticable, by providing that insurance companies shall forfeit and lose their right to do business in the state of Illinois upon removing any such action into this court; that by removing the action to this court the plaintiff might lose its right to transact business in the state of Illinois, and would certainly become involved in a serious controversy with the state respecting the transaction of any subsequent business by the plaintiff therein; that the

laws of the state upon certain questions of general insurance law, as interpreted by its highest legal tribunal, and applicable to the facts in this case, are somewhat different from the law as interpreted by the federal courts upon the same questions, and, from the standpoint of the federal courts, are unduly and erroneously adverse to insurance companies; that the plaintiff is entitled to an application of the law according to the decisions of the federal court, and that under the facts set forth in the bill the plaintiff is without a due and proper remedy at law in respect to the claim of the defendant under said insurance policy, and is without any remedy at law whatever in the United States court; that prior to the filing of the original bill the amount of the premium paid by Lord, with lawful interest thereon, was offered and tendered by the plaintiff to Lord and to the defendant in lawful money of the United States, which was refused by them. Other facts and circumstances are alleged, but these are sufficient for the purpose of determining the question before the court.

Gilbert E. Porter, for appellant.

W. S. Oppenheim, for appellee.

Before WOODS, Circuit Judge, and BUNN and ALLEN, District Judges.

BUNN, District Judge, after making the foregoing statement, delivered the opinion of the court.

It must, we think, be conceded that the bill in this case alleges facts constituting a good cause of action in equity for the cancellation of the policy, unless the plaintiff has a full and adequate remedy at law for the same cause. A suit at law has been commenced in the state court of Illinois to recover upon the policy, and, if it be an adequate remedy at law to turn the plaintiff over for litigation of its rights in the state court under the circumstances set out in the bill, then the United States circuit court in equity should disclaim jurisdiction. But there are two reasons why we think the remedy thus open to the plaintiff, of having its rights determined in an action at law, does not meet the requirements of the rule: The first is that the plaintiff being a citizen of New York, and the defendant a citizen of Illinois, the plaintiff, under the constitution, has the right to come to the federal court for an adjudication. For a person entitled to litigate in the federal court, it is not an adequate remedy at law to be invited into a state court by his antagonist to adjudicate his rights. Second, the remedy open to the plaintiff is one not under its own control, but in the control and discretion of the opposite party. These two principles, we think, are sufficient to confer a legal discretion upon the federal court, which it ought to exercise, in favor of its own jurisdiction, in behalf of any person or corporation which, from its citizenship, has the undoubted privilege of having its rights adjudicated in the federal court. The remedy at law, in order to defeat the right to proceed in equity, should be full and adequate. It should be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655; Sullivan v. Railroad Co., 94 U. S. 806, 24 L. Ed. 324. And the application of the rule depends upon the circumstances of each case. Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580.

In the federal courts it is well settled that the court will not turn a suitor in equity over to a remedy at law in the state courts, but only

to the law side of the federal court. This was adjudicated as early as 1823, in Mayer v. Foulkrod, 4 Wash. C. C. 349, Fed. Cas. No. 9,341. That was a case in equity for the recovery of a legacy, and it was suggested that the complainant had a remedy at law in the state court; but the court, by Washington, J., said:

"If the counsel for the defendant meant to argue that, because the plaintiff might have maintained an action in the state court for the recovery of the legacy, therefore the equity jurisdiction of this court is ousted, we must protest against the doctrine. This case is clearly within the jurisdiction of this court. No objection can be made to the jurisdiction of the equity side of it, but that there is complete and adequate remedy on the other side of this court. It is no argument to say that the plaintiff may have such a remedy (could it even be truly said) in the state court. The conclusive answer is that the plaintiff is under no obligation to resort to that jurisdiction."

Bean v. Smith, 2 Mason, 252, Fed. Cas. No. 1,174, is a still earlier case,—decided in 1821; opinion by Mr. Justice Story. This was an action in equity to set aside conveyances for fraud. The court, in its opinion, says:

"The other objection is not so much to the competency of the court, as in the nature of a demurrer to the bill for want of equity. Much stress has been laid upon that clause of the judiciary act of 1789 (chapter 20, § 16) which declares 'that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law.' I take this clause to be merely affirmative of the general doctrine of courts of equity, and in no sense intended to narrow the jurisdiction of such courts. It has been repeatedly held by the supreme court that the equity jurisdiction of the courts of the United States does not depend upon what is exercised by courts of equity or courts of law in the several states, but depends upon what is a proper subject of equitable relief in courts of equity in England, the great reservoir from which we have extracted our principles of jurisprudence. If, therefore, a bill of this sort states a case properly within the cognizance of courts of equity, according to the general doctrines of their jurisprudence, I should have no difficulty in overruling this objection, although the state courts of Rhode Island might afford some sort of remedy at law to aid the plaintiff. There are many cases in which courts of law and equity exercise a concurrent jurisdiction, and the judiciary act never intended to disturb that jurisdiction. In such cases it is supposed that the remedy at law is not adequate and complete for all the purposes for which the plaintiff may claim relief."

In the leading case of Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, it is said in the very able opinion by Mr. Justice Harlan that:

"The adequacy or inadequacy of a remedy at law for the protection of one entitled upon any ground to invoke the powers of a federal court is not to be conclusively determined by the statutes of the particular state in which suit may be brought. One who is entitled to sue in the federal circuit court may invoke its jurisdiction in equity wherever the established principles and rules of equity permit such a suit in that court, and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action. It is true that an enlargement of equitable rights arising from the statutes of a state may be administered by the circuit courts of the United States. Case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Dick v. Foraker, 155 U. S. 404, 415, 15 Sup. Ct. 124, 39 L. Ed. 201; Bardon v. Improvement Co., 157 U. S. 327, 330, 15 Sup. Ct. 650, 39 L. Ed. 719; Rich v. Braxton, 158 U. S. 375, 15 Sup. Ct. 1006, 39 L. Ed. 1022. But if the case, in its essence, be one cognizable in equity, the plaintiff—the required value being in dispute—may invoke the equity powers of the proper circuit court of the United States wherever juris-

diction attaches by reason of diverse citizenship, or upon any other ground of federal jurisdiction."

Coler v. Board (C. C.) 89 Fed. 257, was a bill by the holders of county bonds to prevent the county officials from applying certain funds to any purpose except to pay the interest coupons. The defendants questioned the jurisdiction of the court on the same ground relied upon here. The court, by Simonton, C. J., in disposing of the question, says:

"Such a remedy might, perhaps, be found in the practice under the Code of North Carolina, but this will not affect the ancient and well-established jurisdiction of the court of equity. The adequacy or inadequacy of a remedy at law for the protection of one entitled on any ground to invoke the powers of a federal court is not to be conclusively determined by the statute of the particular state in which suit may be brought. Smyth v. Ames, 169 U. S. 516, 18 Sup. Ct. 418, 42 L. Ed. 819. The test is, has he a remedy at law in this court? If he has not, then a court of equity has jurisdiction."

In Stanton v. Embry, 46 Conn. 595, a bill was filed to enjoin an action at law upon a judgment rendered in the District of Columbia. In the opinion, by Pardee, J., it is said:

"It is claimed by the counsel for the respondent that this right to go into the court which rendered the judgment and ask for a new trial,—a remedy which it is claimed, is open to the petitioners under the laws of the District of Columbia,—is an adequate legal remedy, and that this court cannot assume equitable jurisdiction over the matter while the petitioners have this remedy. But no legal remedy can be considered adequate which a party is compelled to go into a foreign jurisdiction to avail himself of. It must be a remedy which our own courts can apply."

Suits for the cancellation and delivery up of conveyances, insurance policies, and other contracts, obtained by fraud, constitute an immemorial head of equity jurisdiction. Joyce, in his elaborate work on Insurance (section 1674), says:

"If the contract is obtained by fraud or deception, or by false and fraudulent misrepresentations, * * * equity will take cognizance and grant relief. So, also, will jurisdiction be entertained if the party has no adequate remedy at law. But the fact that the party has an adequate remedy at law does not of necessity preclude a resort to equity, nor does it follow that for such reason a court of equity will refuse to entertain jurisdiction. If the special circumstances would render it inequitable, unjust, or a hardship to compel the plaintiff to await a suit at the instance of the other party, the court will exercise its power."

This, no doubt, is now the reasonable and well-established rule.

The case of British Equitable Assur. Co. v. Great Western Ry. Co., 20 Law T. 422, was a case of the procurement of a policy of life insurance by a gross fraud, similar to the one practiced in this case, if the allegations of the bill be true. It was brought, also, as in this case, after the death of the insured. The same objection was made to the jurisdiction as is made in the case at bar. Lord Justice Giffard, in his opinion concurring in the main opinion, says:

"I was surprised, I must say, to hear the question of jurisdiction argued in this case. If there is any one thing clearer than another, it is that in such a case as this this court has jurisdiction."

In that case the policy had been assigned before suit brought, but equity took jurisdiction to decree a cancellation; and Lord Justice

Selwyn, after stating the circumstances of the fraud, concludes his opinion in these words:

"Under these circumstances, therefore, I think it quite clear that the policy is a void policy, and one which the office was entitled to file a bill to have canceled and delivered up; and, considering the very serious consequences to insurance companies of disputing upon any other than very clear ground, in this case, as I have formed a very clear opinion that in my judgment they were fully justified in resisting this claim, that there was no foundation for this appeal, and that it must be dismissed with costs."

The fraud in the case at bar does not rest upon proof. It stands admitted by the answer. The deceased applies for an insurance upon his own life for $50,000. He answers all the questions in regard to his physical condition in a satisfactory manner. He is physically sound when the application is made and the policy tendered. But he declines to receive it, because he wants to know something more of the company before investing. Afterwards, and before anything more is done, he is taken down with acute pneumonia, and his chances for life are desperate. His friend now steps in, knowing all the facts in regard to the changed condition of the assured, pays the premium, and takes a delivery of the policy to himself; the company knowing nothing of assured's sickness. That day, or the day but one after, the assured dies, as it was expected he would. The fraud perpetrated is something quite appalling, in the baldness and boldness of its outlines. Upon the allegations of fact in the bill which are admitted to be true, it stands out "gross as a mountain, open, palpable." Under the circumstances, it seems hardly incumbent on the court to make excuses for taking jurisdiction in equity to cancel the policy, without subjecting the company to the uncertainty and delay attending a litigation in the state court, over which it can exercise no essential control, but the jurisdiction of which rests substantially in the will and discretion of another party. Upon the hearing on the merits, if the evidence should present the case in any other light, and it should appear that the remedy at law would be adequate, the bill could then be dismissed.

Mr. Joyce (Joyce, Ins. §§ 1674, 1680) sums up the authorities on this subject in the following words:

"The result of the cases seems to be this: That, if equitable interposition is sought before loss or death, the right of the plaintiff to the aid of the court is better than it would be were he to wait until after loss or death, when the question might arise whether his remedy by way of defense to an action at law on the policy would not be adequate, and when it would be necessary to show that some obstacle prevented making the defense at law. In other words, having no remedy at law before loss, the case presented by a bill brought after loss would have to show, notwithstanding a then existing adequate remedy at law, that resort to equity was necessitated by some particular circumstance of equitable cognizance warranting equitable relief; and it would seem reasonable to state as a rule that the fact that the loss has occurred is not conclusive, and upon a proper averment of facts showing that a resort to equity is either necessary, expedient, or proper, or that some obstacle prevents a complete defense at law, the court may, in a reasonable and proper exercise of that discretion which is generally exercised in matters of cancellation, take cognizance and grant relief."

The case of Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, is relied upon to show that a suit in equity cannot be maintained to can-

cel a policy after the death of the insured. But the case does not go quite so far as that. The case was heard in the circuit court upon the merits, and the bill dismissed because it appeared that an action at law was then pending in the same court upon the law side, and that the remedy which the complainant could avail himself of there would be adequate; and the supreme court affirmed the decree. What the court held was that, although equity had power to order the delivery up and cancellation of a policy of insurance obtained on fraudulent representations and suppressions of facts, yet it will not generally do so, when these representations and suppressions can be perfectly well used as a defense at law in a suit upon the policy. Here the suit at law was pending in the same court. There was no invitation to the plaintiff to go into another jurisdiction to seek an adjudication of his rights. The point was not raised nor adjudicated as to whether a remedy at law could be adequate, and as effectual as the remedy in equity, where the complainant had not the remedy under his own control. In the recent case of Bank v. Stone (C. C.) 88 Fed. 383, heard before Mr. Justice Harlan, sitting with the two circuit judges, this question seems to have been adjudicated. A bill was filed to restrain collection of taxes under an act of the legislature of Kentucky, upon the ground that the act was unconstitutional, in that it impaired the obligation of the contract contained in the bank's charter from the state. The case, like this, was heard upon demurrer to the bill. In answer to the same contention that is made here,—that an adequate remedy at law existed,—the court, by Mr. Justice Harlan, says:

"It would seem clear that a court of equity will not withhold relief from a suitor merely because he may have an adequate remedy at law if his adversary choose to give it to him. The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party. To refuse relief in equity upon the ground that there is a remedy at law, it must appear that the remedy at law is as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

And this rule seems perfectly reasonable and sound. A similar rule is applied in cases where a claim to real estate is set up against a party in possession, though in that case other considerations concur. The party in possession need not wait for an action of ejectment by his adversary, but may file his bill in equity to quiet the title and have the claimant's title adjudicated. It is, no doubt, true that the plaintiff, if it was willing to incur the loads and forfeitures imposed by the Illinois statutes upon foreign corporations doing business in that state, and who attempt to remove actions from the state to the federal court, might go into the state court and have the action at law removed to the federal court. Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 377. But when it came there it would not have control of it. The plaintiff in that cause would control the action. She could bring it to trial, or she could delay as long as possible, and then discontinue it; wait for the plaintiff's witnesses to die or go beyond the jurisdiction of the court, and then commence again in the

same or some other state court. It would be in her discretion to say when and where the defendant should have his remedy. A remedy so much in the discretion and control of the adversary party can hardly be said to be as efficient practically as the one in equity to cancel the policy. Very likely the plaintiff would choose to try the case in the state court, rather than subject itself to the penalty of losing its business in the state. But should the plaintiff be put to such an election, under the circumstances of the case? It is quite evident the plaintiff has had no opportunity to bring this action before the death of the assured, because that death took place immediately after the delivery of the policy to Lord.

We are therefore of opinion, under the allegations of the bill,—the federal court having, by the commencement of the suit, obtained jurisdiction both of the subject-matter and of the parties, and the only objection being that the plaintiff has an adequate remedy at law,—that the court should have entertained the cause and overruled the demurrer to the bill. The decree of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion.