# DESOLA & RAMIREZ

*v.*

# WM. F. WILLOUGHBY, Treasurer of Porto Rico.

EQUITY PRACTICE—DUE PROCESS OF LAW—MULTIPLICITY OF SUITS.

1. The equity practice of a United States court is not controlled by the local law.

2. Taxes need not be collected by a suit or judicial process in a court, but may be by a summary process, such as forfeiture; and this is "due process of law." But a statute of forfeiture must be construed strictly, and not to devest title without inquest of office except by express terms or necessary implication.

3. An adequate remedy at law must be as efficient as one in equity. It must be obtainable in any court, state or Federal, having jurisdiction.

4. Where an apportionment of taxes is to be made among municipalities and other local divisions, and complainants would be compelled to resort to a multiplicity of suits at law against them to recover taxes illegally exacted, there is ground for equitable interference.

March 5, 1903.

---

*Federal courts—effect of state laws and decisions in.* Various phases of this question are treated, and the authorities relating thereto are presented, in the following editorial notes: *State laws as rules of decision,* notes to Elmendorf v. Taylor, 6 L. ed. U. S. 290; Jackson ex dem. St. John v. Chew, 6 L. ed. U. S. 584; United States ex rel. Butz v. Muscatine, 19 L. ed. U. S. 490; *State laws as governing, competency of witnesses in United States courts in civil cases,* note to Vance v. Campbell, 17 L. ed. U. S. 168; *State limitation of actions in Federal courts,* note to Elmendorf v. Taylor, 6 L. ed. U. S. 290; *Federal courts following state court decisions,* notes to Clark v. Graham, 5 L. ed. U. S. 335; Elmendorf v. Taylor, 6 L. ed. U. S. 290; Jackson ex dem. St. John v. Chew, 6 L. ed. U. S. 584; Mitchell v. Burlington, 18 L. ed. U. S. 351; United States ex rel. Butz v. Muscatine, 19 L. ed. U. S. 491.

Desola & Ramirez v. Willoughby.

*Mr. N. B. K. Pettingill* for complainants.

*Mr. James S. Harlan,* Attorney, General, for defendant.

HOLT, Judge, delivered the following opinion:

This case is submitted upon demurrer to the bill. It avers that the complainants imported from the United States into Porto Rico a lot of matches which had been bought by them in the United States, and upon which they paid to Porto Rico, by means of canceled revenue stamps, 15 cents per gross of boxes; but that the defendant, the treasurer of Porto Rico, because the boxes containing the matches were marked "Made in Sweden," is claiming that they were imported from a foreign country, and that therefore the rate of 30 cents is collectible; and that to this end he has seized the matches, and is threatening to declare the same forfeited to the people of Porto Rico, and to sell the same under authority attempted to be given him by § 91 of the revenue law of Porto Rico.

Section 79, schedule A, subsection 14 of it, provides that on all matches imported from the United States there shall be paid on each gross of boxes of not over one hundred sticks to the box, 15 cents; and if imported from countries other than the United States, it shall be 30 cents.

Section 91 provides that all articles upon which the proper stamps have not been affixed and canceled "shall be declared forfeited to the people of Porto Rico, and all such forfeited articles shall be sold at public auction to the highest bidder, and the proceeds from such sales paid into the treasury of Porto Rico."

As ground for equitable interference by this court by way of injunction, it is claimed by the complainants that this last provision is void, as such a seizure and sale would be a taking of complainants' property without due process of law; also that

said treasurer cannot be sued to recover taxes illegally exacted; and that, in any event, he is required by § 85 of said revenue act, at the end of each quarter of the fiscal year, to pay 15 per cent of all such taxes to certain municipal districts and other local divisions of Porto Rico; and therefore if the complainants are compelled to pay the taxes, they would be subjected to great inconvenience, expense, and a multiplicity of suits to recover the same.

The demurrer admits the truth of facts well pleaded. It must, therefore, be taken as true that these matches were bought in, and imported from, the United States. The local law authorizes an injunction against any proceeding to enforce the collection of an illegal tax; but this is not controlling, as the equity practice of this court is not controlled by the local law. A state or insular officer, however, acting unlawfully, although claiming to act as such officer, is liable to suit. It is not an action against the state or sovereignty.

Complaints against insular or state tax laws should be left to a legal remedy, unless injustice will result. There must be a plain case to authorize relief in equity. It is a general rule that there must be a hearing before a condemnation. The prohibition against depriving any person of life, liberty, or property without "due process of law" is not new in constitutional history; it is not new in the Constitution of the United States. The phrase "law of the land," in *Magna Charta,* is its equivalent. It is in the very nature of our system of law. It is woven into the webb and woof of our form of government. Property may be taken, however, by the government under the taxing power for public uses by summary proceeding. This right is founded in necessity; sanctioned by it and consent; and when so taken, it is due process of law and according to the law of the land. Taxes need not be collected by suit or judicial process. Generally they

are not so collected. The necessity of government and long usage has established a different procedure, which has always been held to be "due process of law." In fact "due process of law" is such an exercise of governmental powers as the settled maxims of law permit. It need not necessarily be a regular proceeding in court or after the manner of a court. Davidson v. New Orleans, 96 U. S. 97, 24 L. ed. 616; Kelly v. Pittsburgh, 104 U. S. 78, 26 L. ed. 658.

The lawmaking power determines the method of collection. It may authorize summary methods,—forfeiture of property being among them.

In Den ex dem. Murray v. Hoboken Land & Improv. Co. 18 How. 272, 15 L. ed. 372, the defendant claimed title by the sale under a warrant issued by a treasury official by virtue of a statute; the power exercised was executive, and not judicial, but the Supreme Court held it was due process of law.

It is true it has been a disputed question as to whether a forfeiture can be perfected so as to devest title without inquest of office; and beyond question a statute of forfeiture has to be construed strictly. Certainly it will not be construed to devest title without inquest, except by express terms or necessary implication.

It has always been permissible to enforce tax or revenue laws by summary remedies, and without the aid of judicial proceeding. The statute in question, however, while it provides that the property shall be forfeited and sold, does not exclude the idea of a judicial finding; and the affidavits on file in the case show that this power is not claimed by the defendant or the executive branch of the government, and has not been so exercised. This contention of complainants is not well founded. It is claimed by the defendant that his demurrer should be sustained because there is an adequate remedy at law. This is denied by

### Desola & Ramirez v. Willoughby.

the complainants, who also assert that if they have any remedy whatever it can only be at great inconvenience, expense, and by a multiplicity of suits. There is no doubt, if there be an adequate remedy at law, the demurrer should be sustained. To be an adequate remedy at law it must not depend upon the will of the adverse party; it must be as full and efficient to the ends of justice as a remedy in equity; nor is it sufficient that he may obtain relief at law in a state or insular court; to be adequate he must also be entitled to a remedy at law in the United States court; he cannot be required to resort to the state court. United States L. Ins. Co. v. Cable, 39 C. C. A. 264, 98 Fed. 761.

Not only is the general rule as stated, but § 723 of the United States Revised Statutes (U. S. Comp. Stat. 1901, p. 583) provides: "Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law."

In a case, however, where time, expense, and a multiplicity of suits will be saved, and the rights of the parties settled in one litigation, the equity jurisdiction will be sustained. Oelrichs v. Spain (Oelrichs v. Williams) 15 Wall. 328, 21 L. ed. 44.

The prevention of a multiplicity of suits is a recognized head of equity jurisdiction. It is at least questionable if the authorized local proceeding for the recovery of taxes would, even in the absence of the necessity of a multiplicity of suits, furnish the complainants an adequate remedy. I am unable to see how it, owing to its character, could be maintained in the United States as well as the insular court.

Section 85 of the local revenue law, however, requires the treasurer at the end of each quarter of the fiscal year, not only to apportion, but to pay, 15 per cent of the taxes imposed by § 79, to the respective municipal districts and other local divisions

Desola & Ramirez v. Willoughby.

of Porto Rico entitled thereto. It is claimed that it is the practice, where taxes are paid under protest, to not thus distribute them until the matter is determined; but there is no provision of law allowing such delay, and the direction of the statute is peremptory as to the time of payment.

If the tax claimed be an illegal exaction, the claimants would, therefore, be at great trouble and expense; and be compelled to resort to a multiplicity of suits to recover it back; and upon this ground, if no other, equity should interfere.

The demurrer is, therefore, overruled.