UNION LIFE INS. CO. OF INDIANA v. RIGGS et al. FIDELITY MUT. LIFE INS. CO. v. SAME. HARTFORD LIFE INS. CO. v. SAME. AMERICAN CENT. LIFE INS. CO. v. SAME. NORTH-WESTERN NAT. LIFE INS. CO. v. SAME.

(Circuit Court, W. D. Missouri, St. Joseph Division. June 5, 1903.)

Nos. 262–266.

1. EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW—CANCELLATION OF IN-
STRUMENTS.
    A federal court of equity has jurisdiction of a suit to cancel a life insurance policy for fraud in its procurement, though instituted after the death of the insured, where there is the requisite diversity of citizenship between the parties; the fact that the fraud might be set up in defense to an action on the policy in the state court, if defendants should bring such action, not giving an adequate remedy at law to exclude the jurisdiction of equity.

2. SAME—FEDERAL COURTS—STATE STATUTE.
    The provision of Rev. St. Mo. 1899, § 7890, that whether a misrepresentation made in procuring a life insurance policy is material shall be a question for the jury, merely declares a rule of state practice, and cannot affect the jurisdiction of a federal court of equity to entertain a suit for the cancellation of a policy for fraud and misrepresentation in its procurement.

3. FEDERAL COURTS—FOLLOWING STATE DECISION.
    A ruling of the supreme court of a state that a suit for the cancellation of a life insurance policy cannot be maintained after the death of the insured is upon a matter of general law, and is not binding on a federal court sitting within the state.

---

¶ 2. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

¶ 3. See Courts, vol. 13, Cent. Dig. § 979.

**4. CANCELLATION OF LIFE INSURANCE POLICY—RIGHT OF ACTION—EFFECT OF DEATH OF INSURED.**

    A life insurance company from which a policy was procured by fraud is not deprived of the right to maintain a suit for its cancellation by the death of the insured, where the fraud was not discovered during his lifetime.

**5. SAME—PARTIES—JOINDER OF CO-CONSPIRATORS.**

    In a suit for the cancellation of a life insurance policy on the ground that it was obtained through a fraudulent conspiracy between the insured and others, brought after the death of the insured, whose estate is insolvent, complainant may join his co-conspirators with his executors or beneficiaries for the purpose of having their liability for the costs adjudicated.

**6. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—ENJOINING OTHER SUITS.**

    Where a federal court has first obtained jurisdiction of a matter in controversy by the institution of a suit therein, it may by a preliminary injunction restrain defendants from bringing an action in any other court involving the same subject-matter.

In Equity. Suits for cancellation of life insurance policies. On motions for preliminary injunctions.

William A. Kerr and Brown & Dolman, for complainants.

Kendall B. Randolph, W. H. Haynes, R. A. Hewitt, J. T. Blair, and W. M. Fitch, for defendants.

PHILIPS, District Judge. The above-named complainants filed separate bills of complaint against the respective defendants. As they present practically the same questions of fact and law, they will be considered in one opinion.

They are suits in equity to have surrendered and canceled separate policies of insurance issued by the respective companies upon the life of Eber B. Roloson, who died February 28, 1903, leaving a will designating the defendants Paul Riggs and Eugene De Hart as executors. The complainants are nonresident corporations, and the defendants are resident citizens of De Kalb county, in this district. The bills, in substance, charge that the said Eber B. Roloson for some time prior to his application for insurance on his life in the respective companies was afflicted with certain maladies and incurable diseases, from some of which he died; that he formed a conspiracy, in connection with the defendants, to defraud the insurance companies by taking out on his life policies of insurance which aggregated about $47,500, by falsely representing his condition of health, and to that end he willfully made false statements in his applications for insurance representing his physical constitution and health; that in answer to certain questions, to which he was required to make answer on his examination before such policies were issued, he made false statements and assurances respecting his antecedent and present physical condition and disorders; and that in pursuance of said conspiracy he procured the local agent of the insurance companies to have him examined by local physicians, who were either in the conspiracy or were imposed upon as to the identity of the subject, who made false certificates respecting

    ¶ 6. Federal courts enjoining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 990; Trust Co. v. Grantham, 27 C. C. A. 575.

such examinations; and that all these parties purposely concealed from the insurance companies the fact that at the time of said applications the said Eber B. Roloson was sick with certain dangerous and fatal diseases, from which he afterwards died; that the assured and his co-conspirators purposely concealed from the insurance companies the fact that he had obtained, and was obtaining, such a large amount of insurance on his life. The bill alleges that all of said false statements, assurances, and representations were material in the making of said contracts of insurance, which was well known to the applicant, and that the insurance companies relied upon the truth of said statements when the policies of insurance were issued, and that they would not otherwise have issued the same. It alleges that at the time of taking out said policies of insurance the said Eber B. Roloson was wholly insolvent, and that the premiums stipulated to be paid on all of said policies, amounting annually to the sum of $2,000, with the assistance of the defendant Howard J. Roloson, his brother, were borrowed to pay said installments; that, in pursuance of the understanding between the parties in procuring said insurance, the said Eber B. Roloson, while in a dying condition, made his last will and testament, appointing the defendants Paul Riggs and Eugene De Hart executors thereof, with the understanding that they were to be assisted by the said Howard J. Roloson, who, by private arrangement between him and the deceased, was to be paid $2,000 for his services in and about procuring said policies. The said policies were made payable to the estate of the said Eber B. Roloson, and his daughter was made the principal beneficiary. The said will was admitted to probate in said De Kalb county on the 4th day of March, 1903. The bill alleges that the facts respecting the fraudulent obtaining of said policies were not discovered until after the death of the assured; that the estate of said testator is wholly insolvent, aside from its interest in these policies of insurance; and the defendants L. E. Lee, Howard J. Roloson, and J. M. Osborn are made parties defendant for the reason that they were co-conspirators with the deceased, and as such are liable for the costs of these suits, which the complainants could not otherwise obtain. The bill alleges that in some jurisdictions where suits might be instituted for recovery under the policies of insurance it is provided by local statute that should the insurance companies avail themselves of their right, under the Constitution and laws of the United States, to remove said suits into the federal court, they would forfeit their right to do business in the state, and that they fear such action may be taken by the defendants as to expose them to this disadvantage. There are other allegations made in the bills which are not deemed essential to be set out in passing upon the controlling questions raised on this hearing. The bills pray for the surrender and cancellation of the policies, and that the defendant executors be enjoined from undertaking to collect the same by suits at law, or from assigning and transferring the policies, etc. Tender of the premiums received was duly made.

On the presentation of these bills to the court a temporary restraining order was issued, with leave to the defendants to appear before the court at chambers on the 25th day of May, 1903, to show cause, if

any, why the restraining order should not be continued in force; on which day the defendants appeared by their respective counsel, and, while not presenting a formal demurrer to the bills, they raised the question, which was fully argued by counsel on both sides, as to whether this court could take jurisdiction in equity over this controversy. The court, therefore, has given full consideration to, and proceeds to express its opinion upon, this issue.

In arriving at my conclusion I eliminate the averment of the bill respecting the possibility of the executors instituting suits on the policies in some jurisdiction where unfriendly legislation of the state visits the exercise of the right of removal by the nonresident insurance companies from the state to the federal court by a revocation of its license to do business in the state. It does not occur to me how the executors could institute such suits in another jurisdiction, even if they desired. It is the general rule of administration law that an executor appointed by a court of probate of one state has no standing in the courts of another state to maintain an action therein as such executor. Where there are assets located in the foreign state sought to be recovered, it becomes necessary to have an ancillary administration under the probate laws of the situs of the asset to be reduced to possession, to be administered therein, subject to the rights of the local creditors, if any. How such ancillary administration could be obtained in Illinois, for instance, when the only purpose would be to sue the insurance companies in that state, is not apparent, when the executors can as well institute and maintain such action in the state of their domicile.

I also eliminate from consideration the allegation of the bill respecting the possibility of the transfer of the policies to a nonresident party. The executors holding the policies in trust for the purpose of collection and administration, under the supervision of the probate court, could not sell or assign them. Under the scheme of the administration laws of Missouri, it is the duty of the executors to collect the assets of the estate, and they are only authorized to sell, under order of the probate court, when the claims shall be reported as uncollectible because of the debtor's insolvency.

I have long understood that it inheres in courts of equity jurisdiction to maintain suits for the cancellation and nullification of contracts, in form, obtained by fraud, deceit, or duress. This is unquestionably the doctrine of the English courts. Lord Eldon, in Bromley v. Holland, Coop. 9, speaking of this jurisdiction, says:

"There is an ancient jurisdiction in this court to order bills, policies of insurance, and annuity deeds to be delivered up, and it is a wholesome jurisdiction, to order void instruments to be delivered up, upon which vexatious demands might afterward be set up."

The British Equitable Assur. Co. v. Great Western Railway Co., 20 Law T. 422, presented the case of the procurement of a policy of life insurance by fraud similar to that practiced in this case. The bill was brought, also as in the case at bar, after the death of the assured. Lord Justice Giffard said:

"I was surprised, I must say, to hear the question of jurisdiction argued in this case. If there is any one thing clearer than another, it is that in such a case as this this court has jurisdiction."

The policy in that case had been assigned before suit brought, but the court took jurisdiction to decree its cancellation. Lord Justice Selwyn concludes his opinion in these words:

"Under these circumstances, therefore, I think it quite clear that the policy is a void policy, and one which the office was entitled to file a bill to have canceled and delivered up; and, considering the very serious consequences to insurance companies of disputing upon any other than very clear ground, in this case, as I have formed a very clear opinion that in my judgment they were fully justified in resisting this claim, that there was no foundation for this appeal, and that it must be dismissed, with costs."

Chancellor Kent, in Hamilton v. Cummings, 1 Johns. Ch. 517, discussing the question respecting the power of a court of equity to decree the delivering up of written instruments when void upon their face as well as when depending upon extrinsic evidence, said:

"I am inclined to think that the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, or whether it be void for matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are not well founded."

Story, in his work on Equity Jurisprudence, § 700, says:

"But whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the more modern decisions to be fairly put at rest; and the jurisdiction is now maintained in the fullest extent, and these decisions are founded on the true principle of equity jurisprudence, which is not merely remedial, but also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience for the party to retain it, since he can only retain it for some sinister purpose. If it is a mere written agreement, solemn or otherwise, still while it exists it is always liable to be applied to improper purposes, and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured, or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment."

The Court of Appeals of New York recognize this doctrine. See McHenry v. Hazard, 45 N. Y. 584.

The defendants place their contention, in opposition to the bill, on the case of Insurance Company v. Bailey, 13 Wall. 616, 20 L. Ed. 501. In giving the discussion of Mr. Justice Clifford its full import and relevancy, it is to be kept in mind that "the record shows that an action at law has been commenced by the insured to recover the amounts, and that action is now pending in the court whose decree is under re-examination." Under such circumstances, he held that the matter of fraud in obtaining the policy could be availed of as a defense to the pending action at law. Under the circumstances of that case, when the bill was presented and considered, the complainant had an adequate and complete remedy at law, and therefore there was no occasion or necessity for invoking the aid of a court of equity.

As has been repeatedly said and reaffirmed by the Supreme Court, the adequate remedy at law specified in the judiciary act which will prevent a resort to equity must be "as practical and effective to the ends of justice and its prompt administration as the remedy in equity." Boyce v. Grundy, 3 Pet. 215, 7 L. Ed. 655; Sullivan v. Portland, etc., Railroad Company, 94 U. S. 811, 24 L. Ed. 324. The application of

the rule necessarily depends upon the circumstances of each case. Watson v. Sutherland, 5 Wall. 79, 18 L. R. A. 580.

Having in view the wholesome rule laid down by Judge Story in the quotation above made, that while the fraudulent written agreement or contract exists "it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured, or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment," courts, whose opinions are entitled to the highest respect, lay down the rule to be that when it is sought to turn a complainant out of a court of equity on the ground that he has an adequate remedy at law it must be a remedy at law which the complainant may aggressively invoke, and not one which he may employ if his adversary see fit to accord him the opportunity. In Bank of Kentucky v. Stone (C. C.) 88 Fed. 391, in which Mr. Justice Harlan and Judge Lurton presided, Judge Taft, after asserting that the United States Circuit Court had jurisdiction where the suit is between citizens of different states, said:

"It would seem clear that a court of equity would not withhold relief from a suitor merely because he may have an adequate remedy at law if his adversary chooses to give it to him. The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party."

In United States Life Insurance Company, etc., v. Cable, 98 Fed. 761–763, 39 C. C. A. 264, which was a bill in equity to cancel a policy of insurance after the death of the insured, the Court of Appeals for the Seventh Circuit, discussing a like question, said:

"For a person entitled to litigate in the federal court, it is not an adequate remedy at law to be invited into a state court by his antagonist to adjudicate his rights. * * * The remedy open to the plaintiff is one not under its own control, but in the control and discretion of the opposite party. These two principles, we think, are sufficient to confer a legal discretion upon the federal court, which it ought to exercise, in favor of its own jurisdiction, in behalf of any person or corporation which, from its citizenship, has the undoubted privilege of having its rights adjudicated in the federal court."

So, in Schmidt v. West (C. C.) 104 Fed. 272, which was a suit in equity to cancel a note alleged to have been fraudulently obtained, Judge Baker, after alluding to the length of time which the note might run, and the time in which the holder might bring suit, although it was subject to a defense at law in whosesoever hands it might pass, said:

"Before suit is brought the complainant may be dead, and the evidence to prove the forgery may be lost or unavailable. The complainant has no remedy at law, and can have none, until the defendant or her assignee shall, after the maturity of the note, elect to bring suit upon it. * * * Remedial justice is active, rather than passive, and the law is open to no such reproach as would justly be cast upon it if it were to be held that the complainant can secure no relief until such time during the next 11 years as the defendant may see proper to bring suit upon the note."

After adverting to the contention that the complainant could defeat the note in a suit at law when sued upon it, and the suggestion that the complainant might in the meantime invoke the statute for the perpetuation of testimony, Judge Baker said:

"It is apparent that the statutory right does not supersede or abridge the original and inherent jurisdiction of the federal courts of equity. That the rightful jurisdiction of this court cannot be abridged by any statute of the state is too firmly settled to be open to question, and the mere right of a defense at law when it may suit the pleasure of the holder of a forged note to bring suit cannot be considered an adequate remedy. The difficulty of anticipating and meeting in advance fabricated evidence, which the forger of a note would not likely hesitate to resort to in order to sustain its present validity, at once suggests the inadequacy of any attempt to utimately defeat such a note by preserving evidence therefor under the statute. It may well be doubted whether a defense at law is an adequate remedy in any case in which it cannot be used until the wrongdoer, or one claiming under her, sees proper to put the machinery of the law in motion to enforce her pretended right. For there would be not only no adequate remedy, but no affirmative remedy whatever, available to the complainant, unless a court of equity may entertain jurisdiction and grant appropriate relief for the wrong."

In Mutual Life Insurance Company v. Pearson (C. C.) 114 Fed. 395, Judge Colt maintained a bill, after the death of the assured, to cancel the policy, in which he affirmed the ruling in the preceding cases, that the remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party.

It may here be remarked that the statute of Missouri for perpetuating testimony (chapter 59, art. 1, §§ 4525–4542, Rev. St. Mo. 1899) has no application to the situation of this controversy. This is made plain by section 4537 of the article, which provides that after the completion of the depositions they "shall be delivered by the officer to the recorder of the county in which the suit is pending, or in which the property or matter is situate or belongs, to which such depositions relate." This "matter," until the executors should bring such suit, has no situs. Under the statutes of this state, the executors could bring this action in any county in the state which they might select. Where, then, in such state of the "matter," could such depositions, if taken, be filed?

These complainants have it not in their power to compel the executors to bring an action at law at once or at any time. The executors may bring the action now or hereafter in such time as, under the permission and discretion of the probate court in prolonging the administration within 10 years, they may see fit. Under the Missouri practice act the defendants might bring their action and go to trial, and after the evidence is all in, and after they have learned what the defendants' evidence is, they may, before the case is finally submitted to the jury, take a nonsuit. See C., M. & St. P. Ry. Co. v. Metalstaff, 101 Fed. 769, 41 C. C. A. 669. And after such nonsuit they "may commence a new action from time to time, within one year after such nonsuit." Section 4285, Rev. St. Mo. 1899. And, as already stated, such action could be brought in any county in the state which the executors might select, and this insolvent estate could, ad libitum, infinito, harass the insurance companies, with no power on their part to control or terminate the litigation.

It is evident from the bills of complaint that the evidence relied on by the insurance companies to establish the fraudulent representations and acts of the conspirators rests in the memory of witnesses. Shall the complainants be sent out of a court of protective equity to await the pleasure, as to time and place, of affirmative action by the

policy holders, and be exposed to the risk, in the meantime, of their witnesses dying, becoming insane, or their recollection becoming dim, or now friendly witnesses becoming hostile, or perhaps scattered beyond discovery? It does seem to me that the insurance companies ought to have the right to invoke the conservative, preservative, and protective jurisdiction of a court of equity for immediate relief to safeguard themselves against such situation and contingencies.

The further contention of the defendants against this court taking cognizance of this suit is that under the state statute the executors are entitled to have the questions of fraud in the procurement of the policies tried to a jury. Section 7890, Rev. St. Mo. 1899, reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury."

Without here considering the suggestions made by complainants' counsel as to the validity of this statute as affected by the federal Constitution, it is sufficient for the purposes of this hearing to say that under the allegations of the bills some of the misrepresentations made in procuring the policies pertain to diseases and physical condition of the applicant which actually contributed to his death, and therefore would avoid the policy, even under the statute. The provision of the statute that whether such misrepresented facts contributed to the death shall be a question for the jury cannot control the method of procedure in equity trials in the federal courts. Courts of equity in this jurisdiction proceed according to the methods recognized in the courts of chancery in England at the time of the adoption of the original judiciary act by Congress. State statutes prescribing a trial at law to enforce even statutory rights cannot oust a federal court of its equity jurisdiction to enforce such rights if they are equitable in their nature. Taylor v. Louisville & N. R. Co., 88 Fed. 357, 31 C. C. A. 537; Sheffield Furnace Company v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853. As said by the Supreme Court in Robinson v. Campbell, 3 Wheat. 222, 4 L. Ed. 372:

"A construction, therefore, that would adopt the state practice in all its extent, would at once extinguish, in such states, the exercise of equitable jurisdiction. The acts of Congress have distinguished between remedies at common law and in equity, yet this construction would confound them. The court, therefore, think that, to effectuate the purposes of the Legislature, the remedies in the courts of the United States are to be, at common law and in equity, not according to the practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles."

Indeed, the Supreme Court of the state, in speaking to this statute in Schuermann v. Union Central Life Insurance Company, 165 Mo. 641–649, 65 S. W. 723, say that the provision respecting the province of the jury would not control in a suit in equity to cancel the policy, and that in a suit at law this provision is nothing more than a legislative declaration of the right of trial by jury.

And in Kern v. Legion of Honor, 167 Mo. 471, 488, 67 S. W. 252, 257, the state Supreme Court held that "the statute takes away no material right that was enjoyed prior to its adoption. It is still competent for the company, during the life of the assured, but not after his death, to bring a bill in equity to set aside the contract on the ground that it was procured by fraud."

The assertion that such suit may not be brought after the death of the subject is not based on any statutory provision, but comes within the domain of general jurisprudence, and is not, therefore, binding on this court. The Keene Five Cent Savings Bank v. Reid et al. (recently decided by the Court of Appeals of this Circuit) 123 Fed. 221.

If, through gross deception and falsehood, a contract of insurance be obtained at noon to-day, it is conceded that the moment the fraud is discovered the insurance company may bring suit in equity to undo the contract. If, before the end of the day, and before the fraud is detected, the assured should die, why should the incident of death, eo instanti, oust the jurisdiction of a court of equity to cancel the contract? The right of action by the party wronged attached the instant the fraud was perpetrated. It is a continuing wrong so long as the beneficiary holds the instrument evidencing the contract, and when the executors, as in the case at bar, refuse to accept the premiums tendered to them by the insurance companies, it evidences a purpose to hold and use the policies in furtherance of the fraud in their procurement.

It is true that, upon the happening of the contingency on which the policies became payable, the demand became fixed, in so far as the beneficiaries of the policies are concerned; but until that demand is asserted in an action at law the executors of the wrongdoer had no greater right to hold the formal contract than the party who fraudulently obtained it. The death of the wrongdoer could not, in any degree, alter or lessen the rights of the party wronged, where the fraud was not discovered until after the death of the assured.

In the case at bar the co-conspirators of the deceased survive, and, the estate being insolvent, the insurance companies are entitled to have the aiders and abettors in the fraud reckoned with in the matter of costs incurred in having the written evidence of the ill-gotten contract canceled. This right they cannot affirmatively assert save through a court of equity.

As by these bills this court first obtains jurisdiction over the matters in controversy, it will hold it to the exclusion of any other court. It is therefore competent for this court to enjoin the executors from instituting suit elsewhere to enforce payment of the policies. What it may do after suit brought here it may do in advance. State Trust Co. v. K. C., P. & G. R. Co. (C. C.) 110 Fed. 12, 13.

The court will retain jurisdiction, with leave to the defendants to plead.